Lang *v.* Lang's Executor.

---

HENRY LANG et al., infants, by guardian *ad litem,* appellants,

*v.*

HENRY LANG'S EXECUTOR et al., respondents.

[Filed November 18th, 1898.]

1. A dividend on corporate stock declared after the right to the income has been severed from the ultimate ownership of the stock belongs to the person entitled to the income so far, and only so far, as it is derived from the earnings of the stock after such severance.

Lang *v.* Lang's Executor.

2. The presumption is that the earnings of a corporation have been made at a uniform rate day by day since the last dividend, and a dividend out of earnings should be distributed between the capital and income of a trust upon that basis, but this presumption is subject to be rebutted by proof that the earnings were really made differently.

3. In the absence of a contrary notice, from the parties in interest or by circumstances, a trustee holding corporate stock may safely act on such presumption and also on the presumption that any dividend paid him is out of earnings.

On appeal from a decree advised by Vice-Chancellor Emery, whose opinion is reported in *Lang's Executor* v. *Lang, 11 Dick. Ch. Rep. 603.*

Henry Lang died February 18th, 1896. By his will he gave to the executors therein named all his residuary estate in trust, with directions to sell and dispose of his personal property to the best advantage and to keep the proceeds and all moneys of the estate invested in bonds secured by mortgages on real estate. Except for certain small annuities, the trusts of the will were to pay the entire income of the estate to the testator's son, William F. Lang, and at his death to convey and assign the *corpus* to the son's children. The will was proved March 12th, 1896, but letters testamentary were not issued thereon to the surviving executor until September 26th, 1896. Among the assets that came to the hands of the executor were six hundred and thirty shares, of the par value of $100 each, held by the testator at the time of his death, of the capital stock of the Henry Lang Company, a manufacturing corporation of this state. The executor having received from that company $25,200, being a cash dividend of forty per cent. declared on July 1st, 1896, exhibited in chancery a bill for instructions as to its distribution between the capital and the income of the trust. The following facts were established by evidence taken in the cause : The corporation was organized in 1892, Henry Lang being a large stockholder. The company's fiscal year was from July 1st to June 30th. On July 1st, 1893, a dividend of ten per cent. was declared and paid. On July 1st, 1894, a dividend of twenty per cent. was declared and paid. At the close of the fiscal year

ending June 30th, 1895, the surplus and accumulated profits of the company were ascertained to be $185,376.13, out of which was declared and paid a dividend of fifty per cent., viz., $50,500. On January 9th, 1896, a stock dividend of $49,000 was declared, making the full authorized issue of $150,000, and of this Mr. Lang received his proportion, thereby making his total holding the six hundred and thirty shares that came to the hands of his executor. At the same time that this stock dividend was declared certain sums were charged off from the assets, leaving as the accumulated surplus from the last fiscal year the sum of $69,595.55. At the close of the fiscal year ending June 30th, 1896, it was ascertained that the net profits of the year were $123,520.48. A cash dividend was then declared of $60,000, being forty per cent. on the entire stock of the company, and it was that dividend upon the stock of Henry Lang that his executor received.

The decree directed such dividend to be paid as income to William F. Lang, and from it his children, by their guardian *ad litem*, have appealed.

*Mr. Sherrerd Depue*, for the appellants.

*Mr. Charles A. Reed*, for the respondents.

The opinion of the court was delivered by

COLLINS, J.

The underlying principle applicable in this case is that no corporate dividend declared after the right to the income has become severed from the ultimate ownership of the stock upon which such dividend is declared belongs in equity to the person entitled to income except so far as it is derived from the earnings of the stock after such severance. The general trend of judicial opinion in this country is towards the adoption of that principle, and we adopt it without qualification.

The court of chancery, while acknowledging the principle, has applied it too favorably towards the person entitled to

income. The learned vice-chancellor, in the present case, constrained by the controlling precedents cited by him, awards to the income of the trust fund the whole of the dividend in controversy, because to do so will not trench on the accumulated surplus appearing on the books of the corporation at the time of the death of the testator. This cannot be a just rule. The undivided earnings, if any, gave value to the stock, although not yet carried to the surplus account, and formed part of the capital of the testator's estate just as much as if the stock had been converted into money on the day of his death. The reasoning of Chief-Justice Lewis, in *Earp's Appeal, 28 Pa. St. 368*, is unanswerable and conclusive on this point. The dividend must in some way be apportioned in accordance with the declared principle.

A distinction has indeed been made between extraordinary dividends and ordinary or current dividends by enforcing apportionment of those of the first class and not of the others. *Cook Corp. ch. 33.* Even in the leading case of *Earp's Appeal, ubi supra,* which first declared the general doctrine, it is said *obiter* that " in ordinary dividends periodically declared the intervals between the times of payment are so brief and the sums divided are so small that no great injustice can be done in following the rule of judicial convenience that forbids apportionment, in respect of time, in cases of periodical payments becoming due at fixed intervals, while on the other hand the necessity for it is usually very strong, arising from the difficulty of ascertaining the exact amount of profits made during fractions of the period." This so-called rule of convenience always yields to equity, and the difficulty of apportionment is no greater in one case than in another. I cannot assent to the idea that some dividends should stand on a different footing from others. To hold that where a life estate begins one day before a dividend is declared the entire dividend shall go to the life tenant may be convenient, but certainly is unjust.

It can hardly be said, however, that as to the Henry Lang Company there were any ordinary dividends in the common acceptation of the term. Dividends were declared annually, but

there was no fixed rate; and assuredly the dividend of July 1st, 1896, of forty per cent. on the stock did not fall within the exception allowed by Chief-Justice Lewis to his general rule. In any aspect of the case this dividend comes within the principle herein adopted. How shall this principle be applied?

We think that when a dividend is declared out of earnings the reasonable presumption is that those earnings have been made uniformly, day by day, since the last similar dividend was declared, leaving parties in interest at liberty to show that the earnings were really made differently. This will afford a practical rule for trustees who receive such a dividend, and if they act on the presumption without notice to the contrary either. from the parties or by the circumstances they will be protected. So, also, they should be allowed to presume that dividends are out of earnings unless like notice shall charge them to the contrary.

In this case we have all needed facts to make just distribution of the dividend between capital and income, except as to the rate of the earnings made respectively during the time before and the time after Mr. Lang's death. There can be no doubt that the dividend was from the earnings of the last fiscal year, although not so declared in terms. As no account of stock was taken except at the end of each fiscal year, we must resort to the presumption of a uniform rate of earnings. No evidence produced has overcome that presumption, and as the earnings for the year are definitely known the calculation is a simple one. Those earnings were $123,520.48. At a uniform rate there was earned before Mr. Lang's death, on February 18th, 1896, the sum of $78,634.62, and after that date the sum of $44,885.86. The dividend of $25,200 should be distributed between the capital and the income of the trust in those proportions. The result will be $16,042.62 for capital and $9,157.38 for income. The information imparted to the trustee in these proceedings will be notice that there are still undivided earnings of the fiscal year in which the testator's death occurred, and he will be guided accordingly in the future.

The contention of the appellants that the dividend should be applied on the earliest earnings has no force. The same pre-

sumption that makes the earnings uniform should be applied to the dividend upon those earnings. The opposite contention, viz., that as long as the dividend does not exceed the earnings made since the right to income accrued it should go to the income, leaving the capital invested in the stock, has more to be said in its favor, but is nevertheless inequitable, for on that basis such capital is compulsorily left at the hazard of the business.

With regard to the suggestion that under the will in this case the stock should have been sold within a year from the testator's death, and that, therefore, no more of the earnings of the stock should go to the income account than an equivalent of interest on the value of the stock, we entirely agree with the learned vice-chancellor for the reasons stated by him.

The decree will be reversed and modified in accordance with this opinion.

*For reversal*—COLLINS, DEPUE, LIPPINCOTT, LUDLOW, VAN SYCKEL, BOGERT, HENDRICKSON, NIXON, VREDENBURGH—9.

*For affirmance*—None.