The bill in this suit is filed by a trustee to obtain the advice and direction of the court.
In his lifetime, Robert Beattie executed his last will and testatment containing the following paragraph:
"Fourth. I give my executors hereinafter named three hundred and fifty [350] shares of the stock of the Beattie Manufacturing Company in trust to pay the income and dividends thereof from the time of my death to my daughter, Catharine Dixon, for her life, and on her death I give the said shares to her issue, if any, and if none, then to her heirs-at-law, to be divided among such heirs in the same proportions as real estate of which she might die seized would descend."
The executors named in the will have all died, and the trust in the foregoing paragraph has been carried on by the complainant, who was duly appointed.
On January 28th, 1924, the directors of the Beattie Manufacturing Company declared a dividend by adopting the following resolution:
"Resolved, That a dividend of 150% on the capital stock of this company be declared out of the earnings of the year 1923, payable as follows:
 37 1/2 on February 1st, 1924; 37 1/2 on May 1st, 1924; 37 1/2 on August 1st, 1924; 37 1/2 on November 1st, 1924,
to stockholders of record at the close of business on the day preceding each of the aforesaid dates, respectively, and that the residue of the accumulated profits of the company be reserved as working capital."
The first installment of dividends was paid to the complainant and by him turned over to Catharine Dixon, the beneficiary. On March 12th, and before any of the three remaining installments were payable, Catharine Dixon died, without ever having had any issue, but leaving a will which has been admitted to probate in the place of her domicile. By the terms of this will she made certain small bequests, and then gave, devised and bequeathed all the residue of her estate to her sisters, the defendants Agnes E. Beattie and Josephine B. Gedney. *Page 209 
By an interlocutory decree in this cause the trustee has received instructions as to the distribution of the three hundred and fifty shares of stock, and there is left for determination the single question as to his duty in the distribution of those installments of dividends that came into his hands after the death of Mrs. Dixon. Those defendants named as residuary legatees maintain that the funds in the hands of the complainant became a part of the estate of Mrs. Dixon, who will be referred to as the life tenant, while the rest of the life tenant's heirs-at-law say that any dividends paid after her death form no part of her estate, but become, in equity, the property of the holders of the shares of stock at the time of the death of the life tenant.
Under ordinary circumstances, it is elementary that dividends belong to him entitled to the shares to which they are credited at the time the same are declared; but when the right to enjoy the income thereof has been separated from the ownership, problems arise as to the respective rights thereby created that have caused difficulties which have greatly perplexed the courts. In Day v. Faulks, 81 N.J. Eq. 173, Mr. Justice Swayze said:
"The difficulties which courts of the highest standing have found in apportioning a stock dividend applies with increased force against a life tenant to the whole."
Four distinct rules for the decision of such questions are now recognized by as many classes of jurisdictions. Three of them are clearly arbitrary, and adopted for the convenience of the trustees in the discharge of their duties and the court who instruct them in their duties. The fourth one is known as the Pennsylvania rule, and was enunciated in Earp's Appeal, 28 Pa. 368.
Brieflly stated, that rule is that, in a contest between a life tenant and remaindermen over a stock dividend, the remaindermen will be entitled to so much thereof as was earned and accumulated by the company before the life estate commenced, and that portion of it, if any, will belong to the life tenant, which was earned thereafter. The rule was adopted by our court of errors and appeals in Lang v. Lang's Executor, 57 N.J. Eq. 325,
and *Page 210 
has been followed ever since. In the opinion in Earp's Appeal,supra, it is declared that, in the case of ordinary cash dividends as distinguished from extraordinary dividends, no great injustice can be done in following the rule of judicial convenience that apportionment is forbidden. This exception to the rule in Earp's Appeal is unequivocally departed from in theLang Case, supra. That point was not before our court, I realize, in that case, because it is specifically determined that the dividend with which the court was there dealing was not an ordinary declaration. But there can be no question that that court was pronouncing its mature opinion in the matter, and that such would be its decision in any such case involving even an ordinary dividend. The court even went to the length of evolving a method of apportionment. In short, the court of errors and appeals clearly considered the equitable situation and declined to adopt a rule that would satisfy the convenience of courts and trustees at the expense of doing justice between parties. There was not a dissenting vote in the reversal of the decision in this court, and it seems a clear intimation by judicial dictum of the views of that court. Moreover, it would seem that the soundness of this rule ought to be apparent upon slight consideration. One whose capital is invested in a share of stock, so that he is deprived of the present use of his money, is entitled, as a matter of justice, to all beneficial increases that accrue. It is true that the welfare of the corporation, and, consequently, that of the shareholder, would be impaired if he was entitled literally to collect his share of the profits in all events and instantly upon their being earned, and, therefore, the company is empowered to provide for periodic or occasional dividends to be declared in the sound discretion of the directors. It is also necessary, to avoid confusion and establish a wise regulation, that the company may determine who shall enjoy its dividends according as the stock is owned upon a certain day and to provide for the payment of annual or other dividends in installments. All these provisions of the law are for the common good of the corporation and all who have invested in its securities, but they do not affect the *Page 211 
truth of the statement that one is entitled to the enjoyment or disposition of his share of the company's profits made during the time that the stock is his. This is the underlying principle adopted by the court of last resort of this state.
In Lang v. Lang's Executors, supra, a testator bequeathed certain shares of stock in trust to pay the entire income thereof to his son, and, at the latter's death to distribute the corpus
to his children. A large cash dividend upon this stock was paid over to the trustee and he sought instructions. The important fact was that the dividend was out of the earnings of the company for its fiscal year during which the testator died, and the decision was that the life tenant was entitled to so much of the profits during the preceding fiscal year as accrued after his father's death, while that portion which had been earned before the testator's death became a part of his estate, and, in the absence of proof to the contrary, the court assumed that the year's surplus had been made uniformly day by day. Now, it may be said that the court of errors and appeals in the Lang Case was dealing with a situation that had arisen at the beginning of the trust, while in the case at bar the problem arises out of a consideration of conditions at the termination thereof. But that cannot affect the application of the rule. The resolution above set out discloses that every cent out of which the dividend was made was earned and saved during the preceding year, while the life tenant was entitled to the dividends. Consequently, when the requisite amount of those earnings were appropriated and set aside by declaring the dividend on January 28th, 1924, her right became absolute and vested. Had she lived, and that valid resolution has been rescinded, she would have been entitled to have recovered a judgment against the company therefor. King v.Paterson and Hudson River Railroad Co., 29 N.J. Law 504. She might have assigned her right and her assignee could have collected. The action of the board of directors in declaring the dividend severed "all communities of interest in relation to such dividend as between the stockholders themselves and between the stockholders and the corporation. * * * The right of a *Page 212 
party to whom the dividend is payable is recognized as a separate and independent right, which may be enforced as against the corporation." King v. Paterson and Hudson River Railroad Co.,supra. In short, it created a relation of creditor and debtor.
It is argued that the life tenant was only entitled to the dividends in question until the time of her death, and instantly thereafter "any dividends paid * * * are the property of those who are her heirs-at-law." This, however, begs the question. If it be intended that the testator meant any such thing, the answer is that he did not say so. He did not say that any dividendpaid by the company after the death of the life beneficiary should belong to her heirs-at-law. He ordered his executors to pay all dividends to her "for her life." What dividends? Clearly those declared out of earnings after his death and declared
during her life. There is a presumption that the instrument was framed with an appreciation of the legal intent of the language used, and its meaning is as above set forth. It is within the realm of possibility, and may be that, if the creator of this trust could be revived, he would declare it his wish that all the heirs-at-law should enjoy the dividends now in the hands of the complainant instead of its being distributed between only two of that class. But this is idle speculation, and is more than overborne by the policy which has been adopted in this jurisdiction.
Neither can I follow counsel in his argument as to the effect of the language of the resolution, which says that payment should be made "to stockholders of record at the close of business on the day preceding" each of the dates upon which the installments were to be paid. That provision did not affect the title of the life tenant to the payments. It only deferred them for the benefit and convenience of the company. The dividend payments were due to her, although not payable until future dates. This is so elementary as to require no citation. I have never known it to be said that one who has a vested right in property, which was not to be enjoyed until a future date, may not dispose of it by assignment, *Page 213 
will, or otherwise. A vested remainder will immediately occur to anyone as a typical illustration.
Section 3729 of Fletcher's Cyclopedia is quoted by the heirs-at-law to show that an executor "is clearly entitled to dividends declared" during the lifetime of the person entitled to the dividends for life. That is exactly what is now being decided in a case where the earnings out of which the dividend is declared were acquired by the corporation during the term of the life interest as would almost invariably be the fact, except, perhaps, in some instance where the life tenant had enjoyed his right for only a short period of time, and the dividend was made out of profits that had accrued prior thereto.
I will advise a decree instructing the complainant to deliver the dividends remaining in his hands to the personal representatives of Mrs. Dixon. Parenthetically, I might say that it is of no moment, so far as I can see, in which manner her name is spelt.