The issue in this matter is as to the rights, as between successive life tenants, in and to certain sums received by the trustees as income of the trust fund, being dividends on certain corporate stocks comprised in the corpus of the fund. Under the terms of the trust the income was payable in ten shares to and among ten life beneficiaries; by the death of one of these beneficiaries (Edward H. Graves), the income thereafter became payable in nine shares to the remaining nine beneficiaries.
The dividends in question were quarterly dividends of the corporation and were received by the trustee subsequent to the death of Edward H. Graves. They were apportioned by the trustee between the two successive groups of life tenants in the same manner as the apportionment of the extraordinary dividend was made between life tenant and remainderman in Lang v. Lang'sExecutor, 57 N.J. Eq. 325 (at p. 329); 41 Atl. Rep. 705. In accordance with the rules laid down in the Lang Case, it was presumed that the dividends were declared out of earnings and that those earnings were made uniformly day by day since the declaration of the last preceding similar dividend; and the dividends (of each company) for that quarter-yearly period in which the death of Edward H. Graves occurred was apportioned or divided between the two sets of life tenants in proportion to the ratio between the respective number of days (in the quarter) prior to and subsequent to such death; and the dividend (of each company) for the quarter-yearly periods subsequent to that one in which the death of Edward H. Graves occurred were credited wholly to the second set of life tenants. *Page 549 
The executor of Edward H. Graves excepts to the trustee's account, and contends that a larger portion of these dividends should be credited to the first set of life tenants (including its testator) because it appears that in fact the greater part of the dividends for the quarters subsequent to that in which Edward H. Graves died were paid out of reserves of earnings actually made by the corporations prior to the date of that death; and the exceptant contends that the trustee had knowledge or notice of this fact.
It is true that the presumptions above mentioned are only presumptions and hence rebuttable, and that the Lang opinion expressly says that the trustee may not rely upon them if chargeable with knowledge or notice to the contrary. It is true also that although the actual subject of determination in theLang Case was an extraordinary dividend, there are judicialdicta of great force and definiteness in that opinion to the effect that the same rules apply to all dividends. It is further true that although the Lang Case dealt with apportionment of dividends as between life tenant and remainderman, it has been determined by this court in Hagedorn v. Arens, 106 N.J. Eq. 377; 150 Atl. Rep. 5, that similar rules as to apportionment of dividends are to be applied as between successive life tenants.
It would appear, however, that Mr. Justice Collins, in the statement in the Lang Case: "I cannot assent to the idea that some dividends" (ordinary or current) "should stand on a different footing from others" (extraordinary dividends) — had particularly in mind to negative the idea that the life tenant is entitled to the whole of a regular ordinary dividend declared immediately or soon after the commencement of the life tenancy. This seems clear from his next succeeding sentence. The principle he primarily intended to establish was that the life tenant was only entitled to a portion of the dividend declared next after the commencement of the life tenancy, even though that dividend was a regular, ordinary dividend. That principle is observed if such a regular dividend is apportioned between life tenant and remainderman in the same ratio as exists between the portions *Page 550 
(of the dividend period) respectively subsequent to, and prior, to the commencement of the life estate — without considering or inquiring into the particular time or times when the moneys represented by that dividend were actually earned by the corporations.
That apportionment of regular dividends is to be made at least to that extent between life tenant and remainderman, is thoroughly established, it is deemed, by the Lang Case. It has been so considered in the numerous cases decided subsequently in this court. See Lister v. Weeks, 60 N.J. Eq. 215 (at p.225); 46 Atl. Rep. 558; Brown v. Brown, 72 N.J. Eq. 667 (atp. 678); 65 Atl. Rep. 739; Beattie v. Gedney, 99 N.J. Eq. 207; 132 Atl. Rep. 652; Hagedorn v. Arens, supra; Union CountyTrust Co. v. Gray, 110 N.J. Eq. 270; 159 Atl. Rep. 625; CityBank Farmers Trust Co. v. McCarter, 111 N.J. Eq. 315;162 Atl. Rep. 274; Hewitt v. Hewitt, 113 N.J. Eq. 299;166 Atl. Rep. 528.
That apportionment is to be made between successive life tenants (both as to regular dividends and extraordinary dividends), in the same manner as between remainderman and life tenant, was decided in Hagedorn v. Arens, supra. So much at least of a regular dividend declared after the death of the first life tenant, is to be apportioned to the estate of the first life tenant as is proportionate to that fraction of the dividend period during which that life tenant survived.
In the instant case apportionment of that kind — to that extent — was made by the trustees, and is so shown by their account. Should any greater share be apportioned to the first life tenant, out of the first regular quarterly dividend declared after his death — and should any apportionment be made to him out of subsequent quarterly dividends — by reason of the fact that all, or a portion of the moneys paid out in such dividends were in fact taken from earnings made by the company prior to that death? Or, to put the question in a different form — in the case of regular and ordinary dividends is apportionment to be made in accordance with the presumptions, as conclusive presumptions, that such dividends are paid out of earnings, and that such earnings have been regularly *Page 551 
made day by day during the dividend period; or are these presumptions open to rebuttal in the case of regular ordinary dividends as well as in the case of extraordinary dividends?
So far as noted this question has not hitherto been squarely presented in this state. No such issue was before the court, nor considered by the court, in Hagedorn v. Arens, supra, the expressions in which are not to be understood as going any further than to say that (ordinarily) there must be apportionment of regular and of extraordinary dividends — that the life tenant (or second life tenant) is not entitled to all of the next regular dividend or extraordinary dividend declared after the commencement of his life estate — and that the same rule of apportionment which would be applied between life tenant and remainderman is to be applied as between successive life tenants.
The controlling factor in the determination as to how the income from a trust fund is to be paid or distributed, is of course the intent, express or implied, of the creator of the trust. That has been repeatedly held as to a testamentary trust — see In re Fisher, 115 N.J. Eq. 329; 171 Atl. Rep. 169 — and it must equally be true in the case of a trust deed or agreement. In the instant case, however, there is no express provision in the trust instrument; the intent of the settlors can only be ascertained by interpretation of the instrument.
The opinion of Mr. Justice Swayze in McCracken v. Gulick,92 N.J. Eq. 215; 112 Atl. Rep. 317, which was concurred in by all the other members of the court save one (and it does not appear that even the latter dissented on the point in question), contains some expressions presently pertinent, which, although strictly dicta as to the determination of the actual issue there decided, are nevertheless entitled to very great weight in the instant case, especially since that opinion is the opinion of the appellate court, and the same court which laid down the rule in the Lang Case. "Clearly, when he [testator] has created a trust fund and directed that the income be paid a beneficiary for life, he intends to secure that income to the life tenant; that is the very object of the *Page 552 
fund. Where specific stocks may, pursuant to the will or the statute regulating investments for a trust fund, be retained by the trustee, it is a fair inference that the testator meant the life tenant to have the ordinary annual income of those stocks within the limits of variation permitted to the judgment of the directors." "The testator can hardly mean to starve the life tenant for the benefit of remaindermen, whom he often has never seen."
So also in Hagedorn v. Arens, supra, it is said, in speaking of testator's gift of income to a life beneficiary (page 381), "it is fair to assume that he had in mind that the legatee would receive a fair and normal income at a normal rate covering the entire life period." Indicative of the same idea (although actually stated from the standpoint of the trustee rather than that of the life tenant) are the expressions of Vice-Chancellor Backes in Union County Trust Co. v. Gray, supra (at p.275).
There would seem to be no room for doubt but that in the general, ordinary or common understanding, dividends regularly declared at uniform intervals and rate, are considered, by one disposing of them as income to benefit a legatee, in precisely the same light as interest on corporate bonds or real estate mortgage bonds; there is no expectation or intent that such dividends shall be withheld from distribution as income because of the fact that they may not have been currently earned but paid out of reserve built up for that very purpose.
In the instant case the trust is created by a trust deed or settlement agreement. In the interpretation of such a trust instrument, evidence as to the surrounding circumstances is just as competent and material as in the case of a will. De Brabant
v. Commercial Trust Co., 113 N.J. Eq. 215; 166 Atl. Rep. 533.
The evidence shows that the trust estate had been originally created by the will of Henry Graves, and that the trust attempted to be created by that will had been adjudged void as in violation of the rule against perpetuities, in Graves v. Graves, 94 N.J. Eq. 268; 120 Atl. Rep. 420. Testator had provided for distribution of the income to his *Page 553 
children and grandchildren, and for distribution of the corpus
to his great grandchildren at the death of the last survivor of his grandchildren (which latter class included any and all grandchildren who might be born after his death).
Pending appeal the present trust agreement was agreed on and executed for the purpose of settling the litigation, and "to carry out as far as may be the wishes of the testator as indicated by his will," and as a "family settlement," the settlors of the trust being strictly those children and grandchildren of the testator constituting his next of kin, who had been adjudicated as entitled to the corpus by reason of the invalid trust.
Reference to the will shows clearly that (just as in the supposititious testamentary trust mentioned in McCracken v.Gulick, supra, and hereinbefore referred to) the testator's primary purpose must have been to benefit his children and grandchildren as life tenants, since his interest in them must naturally have been far greater than the great grandchildren to whom he gave the corpus — few if any of whom he could ever have seen, and many of whom were, and still are, not yet in existence. So far as the settlors had the intent to carry out testator's intent, therefore, their purpose was to benefit his children and grandchildren by life income. So far as their purpose and intent was to benefit themselves (testator's children and grandchildren) it was the same. The ultimate distribution of corpus to testator's great grandchildren and great-great grandchildren, at the death of the last survivor of the children and grandchildren in being at the date of the trust agreement, was obviously for the purpose of continuing the trust income to the children and grandchildren during their lives and for their benefit, rather than to make a primary benefaction to such a distant and contingent class.
This purpose and intent (by the creators of the present trust) to benefit the life tenants is further evidenced by the fact that the testator's will provided that all "special and stock dividends" should be added to principal, whereas the present trust provides that such dividends shall be considered *Page 554 
and distributed as income, "whether the same shall be declared out of surplus or profits accruing prior or subsequent to the date of this agreement."
Indeed it would seem that it could only be in some exceptional case that it would not appear, at least presumptively, that it was a primary purpose of the creator of the trust; that the life tenants by the gift of income, should receive, so far as possible, the benefit of a regular, constant, normal income. It is concluded that in the ordinary case it is to be deemed (in the absence of clear indication to the contrary) that the regular normal dividends received by the trustee from such stocks as may be (validly) comprised in the corpus of the trust are intended to be distributed to and among the life tenants upon the same basis as if they were interest on corporate or real estate bonds and that the only apportionment to be made of such dividends, between life tenant and remainderman, or between successive life tenants, is apportionment on the basis of a conclusive presumption that such dividends were declared out of earnings and that such earnings were regularly made day by day since the date of the last previous such dividend — i.e., the same kind of apportionment as that actually made in the Lang Case.
It is further concluded that such was the intent in the present case; that the apportionment here made, as shown by the account, was correct; and that the exceptions must be overruled and the account confirmed.
It should be added that the conclusions herein are not to be understood as necessarily applicable in the case of dividends of one of the so-called "wasting asset" companies (such as the one in the De Brabant Case, supra). No consideration has been given to that question because no such issue has been raised or argued herein. Assuming that the Glen Alden Coal Company is such a wasting asset corporation, it is not shown nor alleged that adequate reserves are not set up and maintained by that company against depletion of capital by the payment of its regular ordinary dividends. *Page 555