The controversy is between life tenants and infant remainderman under the 10th, 11th and 12th clauses of the will of Edward Dean Adams, late of Rumson, New Jersey, who died May 20th, 1931, concerns corporate dividends amounting to $49,000 declared by the New Jersey General Securities Company and received by the complainant-executors and trustees since the testator's death, and involves the construction of that will. An apportionment of $43,000 of such dividends between earnings prior and subsequent to testator's *Page 364 
death, agreed upon by counsel for the parties defendant, allots $28,005.30 to prior earnings and $14,994.70 to subsequent earnings. The decision of this court respecting this portion of the dividends in controversy will, by agreement of the parties, be dispositive of the controversy touching the remaining $6,000 also.
It is conceded that in the absence of anything in the will to indicate a contrary intention the rule of law to be applied is that announced by the court of errors and appeals in Lang v.Lang's Executor, 57 N.J. Eq. 325, that dividends are to be apportioned between the life tenants and the remaindermen on the basis of corporate earnings prior and subsequent to the date of testator's death; but neither concession nor agreement by counsel with respect to the law is binding upon the court and the rule of law referred to must be applied as modified and interpreted by subsequent authoritative decisions.
Since the decision in the Lang Case in 1898 some confusion as to its true interpretation and the intention of the court of errors and appeals in promulgating the rule announced by way of dicta has been apparent from the decisions, not only in this court but also in the court of errors and appeals. For instance, in Beattie v. Gedney, 99 N.J. Eq. 207, Vice-Chancellor Bentley spoke for a literal application of the rule. His suggestion was followed by Vice-Chancellor Bigelow in Hewitt v.Hewitt, 113 N.J. Eq. 299, and more recently by the same vice-chancellor in City Bank Farmers Trust Co. v. McCarter,111 N.J. Eq. 315; and the decision of Vice-Chancellor Buchanan, in Hagedorn v. Arens, 106 N.J. Eq. 377, was thought to be in agreement with the comment of Vice-Chancellor Bentley inBeattie v. Gedney until the limitations of that decision were indicated in the later decision of the same vice-chancellor inGraves v. Graves, 115 N.J. Eq. 547 (at p. 551). But an analysis of Vice-Chancellor Bentley's opinion indicates that no strained construction of the rule of Lang v. Lang was necessary to support the decision. That case involved a dividend out of prior earnings, declared during the lifetime, but payable after the death, of the life tenant. *Page 365 
Upon its declaration an interest therein vested in the life tenant (King v. Paterson Hudson Railroad Co.,29 N.J. Law 504), and that interest survived. In McCracken v. Gulick,92 N.J. Eq. 214, the court of errors and appeals, speaking through Mr. Justice Swayze, said:
"The fundamental principle is to carry out the intent of the testator. Clearly, when he has created a trust fund and directed that the income be paid a beneficiary for life, he intends to secure that income to the life tenant; that is the very object of the fund. Where specific stock may, pursuant to the will or the statute regulating investments for a trust fund, be retained by the trustee, it is a fair inference that the testator meant the life tenant to have the ordinary annual income of those stocks within the limits of variation permitted to the judgment of the directors. * * * The testator can hardly mean to starve the life tenant for the benefit of remaindermen, whom he often has never seen."
This language, used by the same court which decided the LangCase, must be taken into consideration in interpreting thedictum of the earlier case.
But the true interpretation of the rule of the Lang Case, it seems to me, is that placed upon it by Vice-Chancellor Backes inUnion County Trust Co. v. Gray, 110 N.J. Eq. 270, later concurred in by Vice-Chancellor Buchanan in Graves v. Graves,supra. Commenting upon the Lang Case, Vice-Chancellor Backes, in Union County Trust Co. v. Gray (at p. 275), with characteristic incisiveness, said:
"The rule of convenience was rejected in the Lang Case as working injustice to the corpus. The sound reasoning of Mr. Justice Collins is established law in the circumstances there presented, but the liberty is taken of thinking that, although the language is sweeping, the rule was not generally condemned, and that the court of errors and appeals did not mean, when a corporation, as a matter of orderly management and to maintain its prestige in lean years, sometimes dips into surplus for dividends, to be restored in fat years (a common practice in these dull days), to charge a trustee with the duty of inquiring into the source of regular dividends and *Page 366 
to hold him responsible to corpus for the fraction of intermingled ante-severance surplus."
There he held that where the income is severed from the ownership of capital stock and given to one for life, ordinary dividends, i.e., dividends periodically declared in the regular course of buisness, whether out of surplus, current profits or both, ordinarily belong to the life tenant. In Graves v.Graves, supra (at p. 552), Vice-Chancellor Buchanan said:
"There would seem to be no room for doubt but that in the general, ordinary or common understanding, dividends regularly declared at uniform intervals and rate, are considered, by one disposing of them as income to benefit a legatee, in precisely the same light as interest on corporate bonds or real estate mortgage bonds; there is no expectation or intent that such dividends shall be withheld from distribution as income because of the fact that they may not have been currently earned but paid out of reserve built up for that very purpose."
This statement was made after a discussion of Hagedorn v.Arens; Union County Trust Co. v. Gray, and McCracken v.Gulick, supra. Vice-Chancellor Buchanan, in the Graves Case, held that where the income is given to one or more for life and the corpus and remainder to another, it is ordinarily to be deemed (in the absence of clear indication to the contrary) that it was the intention of the creator of the trust that the life tenant should receive, so far as possible, a regular, consistent, normal income; and that regular and normal corporate dividends received by the trustees are to be distributed to and amongst the life tenants upon the same basis as if they were interest on bonds. He also held that in such case the only apportionment to be made of such dividends, between life tenants and remaindermen, is apportionment on the basis of a conclusive presumption that such dividends were made out of earnings regularly made day by day since the last prior dividend.
The rule of reason evolved from these cases is, it seems to me, that it is to be conclusively presumed that regular normal
corporate dividends are declared out of earnings *Page 367 
regularly made from day to day, and that, unless a contrary intent is apparent from the instrument creating the trust, such dividends are to be apportioned, as of the date of severance of the income from principal, accordingly. On that basis only the first regular normal dividend after severance is to be apportioned. The intent, express or implied, of the creator of the trust is, of course, controlling. In re Fisher, 115 N.J. Eq. 329.
The 14th clause of the will here involved contains the following:
"Any and all dividends payable in the stock of a corporation or association declaring or authorizing the same, or any extra rights or privileges other than dividends payable in cash, or its equivalent, shall be received and retained or disposed of by them as principal and not as income and be dealt with accordingly."
The quoted language, it seems to me, is a clear indication of the intent of the testator that all extraordinary dividends are to be considered as principal and not as income, and inferentially, that ordinary and regular dividends are to be considered as income and not as principal. A consideration of the facts touching the declaration of dividends by the New Jersey General Securities Company confirms this thought. The will authorizes the retention of the stock of this company by the trustees. McCracken v. Gulick, supra. Dividends thereon have been regularly declared and paid quarterly since April, 1925. These dividends, while regular as to period, were not regular as to amount after January 1st, 1929, obviously because of general economic conditions. In 1925 these dividends were at the rate of sixteen per cent. per annum; in 1926, 1927 and 1928 they were at the rate of twenty per cent.; in 1929 and 1930 at the rate of ten per cent.; in 1931 at the rate of twenty per cent.; in 1932, six and one-half per cent., and in 1933, six per cent. But in 1926 an extraordinary dividend of sixty-four per cent., payable in bonds of another company, had been declared, and in 1927 another extraordinary dividend of fifty per cent., payable in cash, was declared. To properly interpret a will *Page 368 
we must put ourselves as nearly as possible in the position of the testator at the time of its execution. It must be assumed that he anticipated that regular dividends declared and paid during his lifetime would, under ordinary circumstances, be continued after his death; and, that the surplus or reserve earnings of the company might be used for that purpose in lean years must have been apparent to the astute business man that it is conceded the testator was. Viewing the background of this company with the testator's eyes the conclusion is inescapable that he intended that regular normal dividends should go to the life tenants and extraordinary dividends should be added to principal for the benefit of the remaindermen. The result is that only that dividend declared on June 12th, 1931 — the first dividend after the severance — is to be apportioned and that apportionment will be made on the basis of the presumption that it was declared out of corporate earnings regularly made from day to day. This is the rule of the Lang Case as I understand it to have been interpreted in Union County Trust Co. v. Gray andGraves v. Graves, supra, and which I consider controlling.