14 N.J. Super. 152 (1951)
81 A.2d 418
IN THE MATTER OF THE ESTATE OF PAUL E. HELLER, DECEASED.
Superior Court of New Jersey, Essex County Court Probate Division.
Decided May 24, 1951.
*153 Messrs. Riker, Emery and Danzig (Mr. Irving Riker) and Mr. James G. Henry, Jr., attorneys for plaintiffs, Arthur E.C. Heller, Rupert B. Lowe and Fidelity Union Trust Company, executors under the will of Paul E. Heller, deceased.
Mr. William H. Corbin, guardian ad litem of Ellen Lee, John Fenlin, Carol Fenlin, Rupert B. Lowe, Jr., Frances A. Lowe and Martha Ellen Henry, infants.
*154 Mr. Charles R. Hardin, attorney for Ruth H. Lowe, Wren H. Tatlock and Gladys H. Fenlin, beneficiaries.
Mr. Nicholas Conover English, attorney for Constance Heller Henry in substitution for Mr. Canio C. Di Napoli who originally represented Constance Heller Henry on the petition and order to show cause.
NAUGHRIGHT, J.C.C.
This case comes before the court on the complaint of Arthur C. Heller, Rupert B. Lowe and the Fidelity Union Trust Company, executors of the last will and testament of Paul E. Heller, deceased, for settlement of an intermediate account of the said decedent's estate. Some of the questions this court has been asked to pass upon, inter alia, arise on objections made to the executors' account by William H. Corbin, guardian ad litem of certain infants, namely Ellen Lee, John Fenlin, Carol Fenlin, Rupert B. Lowe, Jr., Frances A. Lowe and Martha Ellen Henry, children of named legatees under testator's will whose interest in this proceeding is not questioned.
The guardian ad litem makes the following objections:
(1) He objects to the apportionment made by the executors of the dividend paid to them on June 1, 1948, on certain shares of stock (7% cum. pfd., $100 par) owned by the testator in Heller Brothers Company of Ohio. It is his contention that since the dividend was declared prior to the testator's death it constitutes a part of the corpus of the estate and should not have been apportioned between corpus and income.
(2) He objects to the distribution of the testator's household and personal belongings under paragraph fifth of the will as set forth on pages 7 and 8 of the executors' account, on the ground that since the gift was to testator's nieces and nephew by name it was presumptively a gift to individuals and not to a class, so that as to the one niece who predeceased the testator, her one-seventh share lapsed and fell into the residue.
*155 A stipulation of facts as agreed upon by the parties involved shows that Paul E. Heller died on February 26, 1948, owning 542 shares of Heller Brothers stock, represented by two certificates, one for 467 shares and the other for 75 shares. On November 18, 1947, the board of directors of the company declared the regular preferred dividends payable on December 1, 1947, and June 1, 1948, and these dividends were paid on said dates. All of the dividends due and payable on said stock prior to November 18, 1947, have been paid. As shown on page 160 and Schedule III of their first intermediate account, the executors have apportioned the dividend paid on June 1, 1948, in the same light as interest on corporate bonds or mortgages. The amount of the dividends as declared on November 18, 1947, and made payable on June 1, 1948, was $1,890. In apportioning this sum between income and corpus there was error.
A dividend, whether it be ordinary or extraordinary, becomes a debt due from the corporation to the individual stockholder from the time of its declaration and a vested right of the stockholder at such time. Martindell v. Fiduciary Counsel, Inc., 133 N.J. Eq. 408 (E. & A. 1942); Beattie v. Gedney, 99 N.J. Eq. 207 (Ch. 1926); King v. Paterson and Hudson River R.R. Co., 29 N.J.L. 504 (E. & A. 1861). See also R.S. 14:8-19 and R.S. 14:8-20.
In Scott on Trusts, section 236.2, the following appears:
"The general rule is that a dividend belongs to those who are owners of the shares at the time when it is declared and not to those who are owners of the shares at the time when it is payable. It is held that by the declaration of the dividend by the corporation the dividend is separated from the assets of the corporation and a debt to those who are stockholders at the time of the declaration is created, although payment of the debt is postponed."
More particularly, Professor Scott says in this same section:
"When a dividend is declared prior to the creation of the trust and no date is specified by the corporation as the date on which *156 the shareholders entitled to the dividend are to be determined, the dividend is not income although it is received by the trustee after the creation of the trust."
These statements are fully supported by our New Jersey decisions. In Beattie v. Gedney, supra, testator set up a testamentary trust of certain shares of stock, the income from which was to be paid to a daughter of the testator for life with a gift over in remainder of the stock to others. The company declared a dividend during the lifetime of the life beneficiary payable in four quarterly installments. The first installment was paid to the daughter, but before any of the three remaining installments were payable she died. The court, in holding that the three remaining installments belonged to the life tenant and not the remaindermen, said:
"The resolution above set out discloses that every cent out of which the dividend was made was earned and saved during the preceding year, while the lift tenant was entitled to the dividends. Consequently, when the requisite amount of those earnings were appropriated and set aside by declaring the dividend on January 28, 1924, her right became absolute and vested."
The court explicitly pointed out the fact that the date of payment has no bearing upon the period over which an apportionment is made by stating that she, the life tenant, was entitled to dividends "declared out of earnings after his death (i.e., testator's death) and declared during her life * * *. The dividend payments were due to her although not payable until future dates." Upon its declaration an interest then vested in the life tenant.
To the same effect is Hackensack Trust Co. v. Ackerman, 138 N.J. Eq. 244 (Ch. 1946).
An examination of the cases dealing with the subject of apportionment of stock dividends reveals that in none was there the slightest suggestion that an apportionment could be made of a dividend which was declared before the occurrence of the event severing the interest in income from that in corpus. See Graves v. Graves, 115 N.J. Eq. 547 (Ch. *157 1934) and Bankers Trust Company of New York v. Lobdell, 116 N.J. Eq. 363 (Ch. 1934).
In Lang v. Lang's Executor, 57 N.J. Eq. 325 (E. & A. 1898) a dividend on certain shares of stock owned by the testator was declared during the lifetime of the life beneficiary of the trust. The court, in apportioning the dividend between income and corpus, made it clear that only a corporate dividend "declared after the right to income has become severed from the ultimate ownership of the stock upon which such dividend is declared" is subject to possible apportionment.
The inescapable conclusion is that only those dividends will be subject to apportionment which are declared after the severance of the interest in income from that in principal (which may be either the death of the testator, life tenant, one of a number of successive life tenants, etc.). McCracken v. Gulick, 92 N.J. Eq. 214 (E. & A. 1920); Graves v. Graves; Bankers Trust Company of New York v. Lobdell, supra. See also Scott on Trusts, sec. 236.2 for collection of cases. Accordingly, as the dividend here was declared before the testator's death it must be added to corpus in full and the allowance sought by the executors in apportioning a part to income will be denied.
The second question raised by the guardian ad litem relates to the treatment of certain bequests under paragraph fifth of the will as a class gift. Paragraph fifth provides as follows:
"Fifth: I give and bequeath to my nephew, Arthur E.C. Heller, and to my nieces, Frances Heller Blount, Ruth Heller Lowe, Wren Heller Lee, Gladys Heller, C. Pauline Heller and Elaine Heller, my silverware, jewelry, paintings, pictures, rugs, bric-a-brac, pianos, clocks, tapestries, books and victrolas, to be divided equally among them so that each of them may take articles which in the aggregate shall be of equal value. The division shall be arranged for by my said nephew and nieces among themselves, if possible, but, in the event my said nephew and nieces shall be unable to agree upon the division, my said executors shall divide the same between them so that each of them shall take what in the aggregate shall be of equal value."
*158 Frances Heller Blount died on June 15, 1937, predeceasing the testator and leaving no issue. The testator, Paul E. Heller, had never married and the nephew and nieces named in paragraph fifth were all children of his two brothers, Arnaud G. Heller and R. Arthur Heller. The question for adjudication is whether the bequest under the aforementioned paragraph was a gift to the named legatees individually or as a class.
The guardian ad litem alleges that the rule of construction for ascertaining whether a gift is one to individuals or a class is that where there is a gift by will to individuals described by name, though they may constitute a class, the presumption is that the testator intended to give to them as individuals (even though they might further be described by a class designation, such as children, nephews, etc.). Dildine v. Dildine, 32 N.J. Eq. 78 (Ch. 1880); Security Trust Co. v. Lovett, 78 N.J. Eq. 445 (Ch. 1911). He admits that this is not a conclusive presumption and may be rebutted if it appears from other parts of the will that it was the testator's intention that the persons so named should take as a class and not as individuals. Collins v. Bergen, 42 N.J. Eq. 57 (Ch. 1886); Security Trust Co. v. Lovett, supra. However the guardian argues that the presumption has not been overcome and, therefore, as one of the nieces had predeceased the testator her share lapsed and did not go to the surviving nieces and nephew, as would have been the case if the gift had been one to a class.
It must be pointed out that in no case cited either by the executors or the guardian, and in no case that the court has been able to locate, has language similar to that used in paragraph fifth of the will under consideration, been used. Little can be achieved by a review of the cases, for the language which is held in some of these cases to show that the gift to a class is the paramount intent of the testator is much like the language used in other cases in which the gift to the individual is held to be the testator's paramount intent. The confusion which stems from the cases is largely due to *159 the conflict, seldom noted, between the cardinal principle that in construing a will the intent of the testator governs and the cumbersome legal concept of a class gift. 75 A.L.R. 773.
"The doctrine that the testator ever intends a class when he does not say so in so many words is in any case a beneficent fiction." 49 Harvard L.R. 903 (1935-36). The great majority of testators in all likelihood never heard of a class gift. While the courts have spoken of the intent of the testator in regard to class gifts, what they have done in reality is applied the incidents of a class gift construction where it would more clearly aid the plan or scheme of the testator (and hence subserve his purposes) as indicated by other portions of the will. "The very function of a class is in effect to provide survivorship among members of a group when the testator has failed to do so but would be pleased with that distribution." 49 Harvard L.R. 903.
There has been an overemphasis in most of the cases of the importance of testator's naming of beneficiaries. Now, while the testator might have been thinking of each named beneficiary as an individual and intended to give to them as such when he names them, it is equally possible that where he names them and also describes them by a class label (such as children, nieces, etc.) he was primarily concerned with benefiting the group; and the designation, by name, of the group's members was just by way of making it perfectly clear the group he meant. As a practical matter, the courts have construed a gift as one to a class where the testator appears to have been interested in the welfare of the group to whom he was giving something rather than in the particular individuals in that group. Re Stanhope, 27 Beav. 207, 54 Eng. Reprint 78 (1859).
In the case at hand the enumeration of the legatees appears to be subordinate to the general description of them as a natural class. From the plan of the testator's will it does not seem that the words nephew and nieces can be properly regarded as merely descriptive of the persons named for the *160 purposes of identification. The following indicia seem to indicate that testator had a group in mind to benefit and not just the individuals of that group; although these indicia, taken alone and by themselves, would not be sufficient perhaps to overcome the presumption of which the courts speak.
Firstly, the individually named legatees are mentioned as a group both in paragraph fifth of the will and paragraph ninth (a), (d) and (e). They constitute a natural class (i.e., children of two brothers of the testator) whom the testator appears solicitous of. Secondly, the nature of the property bequeathed was household and personal belongings, which has an important bearing in this regard, as will be shown.
In Fowler v. Whelan, 83 N.H. 453, 144 A. 63 (1928) a bequest was made "to my two sisters, Belle Whelan and Honoria Daley, of said Laconia, all my personal clothing, of every kind whatsoever for such disposition as they may mutually agree upon." The court, in holding the gift was to a class, said that "Articles such as silver teaspoons, etc. are regarded * * * as in the nature of family heirlooms, to be handed down from one generation to another." The court said that the subject matter warranted the inference of a class gift. Likewise in the present case under paragraph fifth of the will the subject matter of the gift were personal effects of the testator. There is further indication in this paragraph that the testator desired the articles therein mentioned to pass to and be divided among the legatees named, such division to be made "among them" exclusively and to be "arranged for by my said nephew and nieces among themselves if possible." He further provided that the executors make the division if "said nephew and nieces be unable to agree," but he failed to provide for participation by the executors in the division in the event that a share or shares should lapse by the death of one or more legatees without issue, or to provide for participation in the division by issue or guardian of minor issue in the event that one or more should die leaving issue.
*161 The failure to make provision against these events would only be natural if the testator intended to benefit the group rather than the members individually. In addition, it is to be noted that the relatives specifically named were also primary beneficiaries of residuary income and the lapse of one or more fractional shares of these chattels would mean little to surviving beneficiaries of the residuary trust income or to the ultimate corpus beneficiaries.
In paragraph ninth (d) the individual legatees were each given 10% of the net income of the residuary trust estate while another, a brother of testator, was given 30%  an indication that the testator was concerned about them as a group rather than individually.
The reasons for the testator providing for substitutional representation and survivorship in paragraph ninth (d) and not so providing in paragraph fifth is purely conjectural. Lawes v. Lynch, 7 N.J. Super. 584 (App. Div. 1950). The cases cited by the guardian ad litem as being dispositive of the issue in this case, particularly the case of In re Cella, 108 N.J. Eq. 496 (Prerog. 1931), are situations of bequests unlike that in the present case. It being the finding of this court that the will as a whole indicates a desire on the testator's part to benefit a group rather than individuals of that group as enumerated, the division of testator's personalty among the surviving members of the group as a class was proper.