In the Matter of F. L. F. FARMERS CO-OPERATIVE ASSOCIATION, INC., a New Jersey corporation, Bankrupt.

No. B 279-58/5403.

United States District Court
D. New Jersey.
Nov. 24, 1958.

L. F. Farmers Cooperative Association, Inc. (hereinafter called the bankrupt).[1] The following May 9th, it was adjudicated a bankrupt. In due course Samuel Rosenshine (hereinafter called the petitioner) filed a claim as a general creditor in the sum of $4,226.91 with interest. He alleged the consideration to be "dividends declared but not paid" based on "certificates of interest" issued to him on the dates and in the amounts following:

| | |
|---|---|
| January 3, 1950 | $2179.07 |
| March 31, 1951 | 1148.42 |
| January 9, 1952 | 896.12 |
| February 28, 1953 | 3.30 |

Each certificate purported to represent his share in the "net income", "net profits" or "net earnings" (as they were variously denominated) of the bankrupt for the fiscal year preceding the date of the certificate, based upon his purchases during that period.

The claim was representative of many such certificates issued to member or non-member patrons of the bankrupt.

The bankrupt moved to expunge the claim. The Referee granted the motion, pursuant to a memorandum in which he set forth his reasons in full.

The petitioner filed his application for review, which the Referee has now certified, posing the question in the following form:

"The Question presented by this Review is whether the holder of a 'Certificate of Interest' in the Debtor Co-Operative Association is a Creditor within the meaning of Sec. (63), sub. a [11 U.S.C.A. § 103, sub. a] of the Bankruptcy Act with a claim entitled to proof and allowance."

Counsel for the creditors on the original petition for bankruptcy, the bankrupt, the trustee, and the petitioner, have submitted briefs and oral argument upon the question.

Irving Verosloff, Trenton, N. J., Irving Friedman, Trenton, N. J., on the brief, for Samuel Rosenshine.

Jack L. Cohen, Newark, N. J., for Bankrupt.

Epstein & Fluharty, Camden, N. J., Harold Krieger, Jersey City, N. J., on the brief, for Receiver.

FORMAN, Chief Judge.

On April 29, 1958, an involuntary petition in bankruptcy was filed against F.

---

1. A copy of the by laws submitted in evidence to the Referee (D–2) contains a certificate averring that the Board of Directors and "stockholders" voted to change the name to F.L.F. Farmers Union Cooperative Association, Inc., on May 2, 1945.

In 1942, the bankrupt was organized without capital stock pursuant to the New Jersey statute.[2] The bankrupt was formed for the purpose of producing and marketing agricultural products among patrons, whether members or non-members. Membership was obtained by the payment of a $5 fee,[3] and maintained by continuing to engage in agriculture and the making of purchases amounting to at least $500 from the cooperative per fiscal year, except that if a member lost his standing by failure to meet either requirement, reinstatement could be had upon fulfillment of the qualifications and payment of $1.[4]

Both the bankrupt and the petitioner, who was a member at the time in issue, agree that the bankrupt reflected an anual profit from 1942 to 1957.[5] It is further conceded that although the annual profits were divided (allotted may better describe the procedure) among member and non-member patrons as required,[6] no payments were made, but certificates representing each member's share in the surplus were issued in substantially the following form:

"January 3, 1950.

"Dear Member:

"A.  Rosenshine

"The F.L.F. Farmers Union Cooperative Association, Inc., has allotted to your Dividend Account* .....................$2179.07

"This represents your Certificate of Interest in the net income of the Association based on your purchases for the fiscal period beginning August 28, 1948 and ending September 2, 1949.

"The above patronage dividend will be paid to you at the discretion of the Board of Directors of the Association.

"F.L.F.  Farmers Union Coop. Ass'n, Inc.

"/s/  Boris  Schwartz
     "President

"/s/  David  Danovitz
     "Treasurer

"* 3569 Bags of Mash at $.5782 $2063.60
" 1571 Bags of Grain at $.0735 $ 115.47"

---

In 1956, certificates issued in 1948 were redeemed. None has been redeemed since. The procedure whereby the dividends are declared, but retained, and certificates issued therefor, is known as a patron's revolving *capital* fund. The patron's revolving *capital* fund has for its corpus declared but unpaid dividends for which certificates of interest (equity) are issued to the patrons. According to

2.  N.J.S.A.  4:13–1 et seq.

3.  By Laws of the F. L. F. Farmers Cooperative Association, Inc., Article III, Section 3 (Ex. D–2).

4.  Ibid, Sections 1 and 2.

5.  At the hearing counsel for the bankrupt and the Trustee suggested that the bankrupt had carried as assets bills receivable at an unrealistic value but petitioner's counsel submitted that this was true only since the collapse of the poultry market some three years ago. A relatively simple analysis of the accounts receivable should resolve this dispute.

6.  N.J.S.A.  4:13–32, L.1924, c. 12, § 21, p. 30, as amended L.1940, c. 146, p. 311, § 2; L.1951, c. 303, p. 1089, § 5.

present New Jersey statutes [7] the certificates are to be redeemed at a later date at the discretion of the Board of Directors.

Petitioner argues that the declaration of a dividend to him on his purchases created a fixed debt, due and owing; that his rights in the premises as a creditor vested at the time of the declaration; and that no later action by the bankrupt can alter the character of the debt, or the status of the petitioner as a creditor. It is noteworthy that the last two arguments presume the existence of a debt due from the bankrupt to the petitioner. Petitioner equates the position of a cooperative association, such as the bankrupt, to that of a corporation based on the following New Jersey statute governing cooperatives:

"The provisions of the general corporation laws of this state, and all powers and rights thereunder, shall apply to the associations organized under this chapter, except where such provisions are in conflict with or inconsistent with the express provisions of this chapter." N.J.S.A. 4:13–12.

■ Thus it is argued on the basis of this statute that since a corporate cash dividend once declared becomes a debt due and owing to the shareholder of a corporation organized under the general corporation law,[8] the dividend declared by the bankrupt cooperative association has the same effect. There exists a crucial difference between the permissible treatment of a "dividend by a corporation" and a cooperative association. A corporation is not empowered by statute to retain and invest or plow back the dividends declared.[9] The cooperative, on the other hand, is empowered by statute to retain declared dividends for use in a patron's revolving capital fund.[10] This distinction negates the applicability of general corporation law to the case at bar.

This matter, then, must be resolved in accordance with Chapter 13 of Title 4 N.J.S.A. which provides for the establishment and management of agricultural cooperatives of two kinds: those which issue capital stock and those which do not. The bankrupt is of the latter type.

Prior to 1951 a cooperative such as the bankrupt was required to divide among the patrons the whole balance remaining after payment of expenses and the establishment of a reserve fund as soon after the fiscal year as possible.[11] In 1951 the original enactment of 1924 was amended to require cooperatives without capital stock, such as the bankrupt, to divide annually the surplus remaining after payment of expenses and establishment of reserve funds except that authority was granted to retain the surplus as part of a "reserve or patrons' revolving *capital* fund, which may be evidenced by certificates of equity * * *"[12] (Emphasis supplied.)

Prior to 1951, no such authority existed and in fact the term "patrons' revolving capital fund" nowhere appears before that date. Further, Section 4:13–32, L.1940, c. 146, p. 311, § 2 authorized the retention of dividends accruing to non-members only, which dividends could be applied to the cost of membership in the association, but it would appear to no other purpose.

It is noted that the certificates issued to the petitioner were for the four years beginning with 1949. It is also to be observed that the actual practice of the bankrupt apparently anticipated the amendatory legislation prior to 1951 and

7. Ibid.

8. In re Central New Jersey Land & Improvement Co., 1933, 113 N.J.Eq. 332, 166 A. 705; In re Heller's Estate, Prob. Div.1933, 14 N.J.Super. 152, 81 A.2d 418.

9. N.J.S.A. 14:8–19, 20.

10. See note 6.

11. N.J.S.A. 4:13–32, L.1924, c. 12, § 21, p. 30, as amended, L.1940, c. 146, p. 311, § 2.

12. See note 6.

that its by laws make reference to "certificates of equity" which may have been intended to be provisions for the retention of patrons' dividends. However, in this respect, the by laws are so ambiguous it is difficult to make out their intendment.

In any event it is clear that from the time of its incorporation the bankrupt was required to divide annually the year's surplus remaining after payment of expenses and establishment of reserve funds. It is also clear that after April 1951 that having done so the bankrupt was authorized to retain the declared surplus as part of a patrons' revolving capital fund. It is apparent that it attempted to do so before 1951. The purpose of the fund is to afford the association a ready source of available capital, as indicated by both its name and the applicable statutes.

Thus in the statutes heretofore cited the patrons' revolving *capital* fund appears to be recognized as a contribution to capital. Moreover, the legislature announced its intention conclusively concerning the status of the holders of certificates in the patrons' revolving *capital* fund in N.J.S.A. 4:13–11, which is also an amendment effective July 13, 1951. It provides that upon the dissolution of an association, the assets are to be liquidated, and all debts and expenses of dissolution paid. *Thereafter* the balance, if any, is to be distributed in the case of an association having no capital stock.

> "(b) * * *, among the persons entitled to participate in the patrons' revolving capital fund, whether evidenced by certificates of equity or otherwise, to the extent of the amounts due to them, according to their respective earned patronage margins retained therein, without relationship to the times at which such margins accrued, with such interest, if any, as may be due thereon; and
>
> "(c) Then, among the members of the association in proportion to

the amount of business done by them with the association during the five years of active operation next preceding the date of dissolution, or such other period of time as may be specified in the by-laws, the entire balance, if any, then remaining undistributed."

I am aware that this provision became effective on July 13, 1951, at which time petitioner had already received certificates for the years 1949 and 1950. However, the original enactment R.S. 4:13–11 (L.1924, c. 12, § 25, p. 33) to which the foregoing is an amendment carried the same connotation with regard to the order of distribution upon dissolution in that it provided that

> "After liquidation of the assets of the association, payment of its debts and of the reasonable expenses of dissolution, the surplus, if any, in associations without capital stock, shall be divided among the members equally."

In the light of the present amendment to the statute (N.J.S.A. 4:-13–11), it is clear beyond peradventure that the New Jersey Legislature did not intend that a patrons' revolving *capital* fund be treated as representing *debts* due, fixed and owing, to the holders of the certificates. Distribution to such holders upon dissolution was to be made only after payments of debts and the expenses thereof. There is no reason to regard the status of the petitioner differently in this liquidation of the association in bankruptcy than the legislature of New Jersey contemplated it would be in a dissolution under the law governing cooperative associations. Nor did petitioner's certificates, issued prior to 1951, achieve any different status. Before that date there simply was no authority to convert patrons' dividends into certificates of any kind. If it was done the patrons acquiesced in permitting their dividends to be co-mingled with the other funds of the cooperative. Certainly no creditors' status was created thereby.

Therefore, I cannot agree with petitioner's contention that the certificates of equity (interest) held by him are to be viewed as a cash dividend of a corporation declared under the New Jersey Corporation Act, N.J.S.A. 14:8–1 et seq.

The Referee, in his memorandum, has cited authorities and ably reasoned that the petitioner cannot prevail in his contention that he is a general creditor of the bankrupt. I concur with him. It follows that the action of the Referee in granting the motion of the bankrupt to expunge the claim of the petitioner must be affirmed. An order should be entered.