WILLIAM MINOT & another *vs.* ELIZABETH THOMPSON & others.

A testato gave all the "estate and property, real, personal or mixed," of which he should die seised or possessed, to trustees, in trust "to take, hold and manage the real and mixed estate and to invest the personal; and after paying for repairs, taxes, insurance and all other necessary charges," including certain small annuities, "to pay over the net income of the trust fund so constituted" to his wife for life, and after her death to certain charities. The testator left no mixed property, properly so called; but left a leasehold estate. *Held,* that the leasehold could not be regarded as mixed property; and that, until it was sold, the widow was entitled to interest on its value at the testator's death; and, after it was sold, to the income of the proceeds.

BILL IN EQUITY filed by the trustees under the will of Thomas Thompson, praying for instructions. The case, as it appeared from the bill and answer, on which it was reserved by the chief justice for the determination of the full court, was as follows :

Thomas Thompson died in 1869, leaving a will dated in 1867, by which, after giving his wife Elizabeth a farm in Medford and his household furniture, and giving certain small legacies and annuities, he made the following disposal of the residue of his estate: "I give, devise and bequeath all my lands, tenements and hereditaments, and all my estate and property, real, personal or mixed, of which I shall die seised or possessed, or to which I may have any claim or be in any manner entitled at the time of my decease, not otherwise herein given, devised or bequeathed, to William Minot, Jr., and James Connor, to hold the same as joint tenants in fee, but upon the following trusts, viz. : to take, hold and manage the real and mixed estate, and to invest the personal; and, after paying for repairs, taxes, insurance and all other necessary charges, including the annuities hereinbefore given, to pay over the net income of the trust fund so constituted to my aforesaid wife Elizabeth, during her natural life, to her sole and separate use and benefit," and after her death to apply the net income to charitable purposes. He gave his trustees power to sell any real estate.

At the dates of the will and of his death, the testator had no heirlooms, monuments in churches, or anything that could properly be called mixed property. But at those dates he had a lease-

hold estate in Boston, which was the residue of a term of twenty years from July 1, 1858; by the terms of the demise the lessee had to pay an annual rent of $2500, with taxes, assessments, insurance and repairs; the estate was appraised in the inventory at $7500; and the gross rent was $4950, and the net income $1225. The testator also, at the said dates, had a leasehold estate in New York, which was the residue of a term of twenty-one years from May 1, 1865, at a ground rent of $425 a year; the lease of this land contained a provision for renewal; and on the land a house had been erected, belonging to the testator, in which he lived up to the time of his death. He left no other leasehold estates. The trust fund was composed of real estate appraised at $435,839, and personal estate valued at $124,736. The widow claimed the income of the leasehold estate in Boston *in specie*.

*J. G. Abbott & S. A. B. Abbott*, for the widow.

*R. Olney*, for the charities.

CHAPMAN, C. J. The plaintiffs, as trustees under the will of Thomas Thompson, have received certain property to hold and manage, and, after paying necessary charges and expenses, and certain small annuities, to pay over the net income thereof to Elizabeth Thompson, the defendant, widow of the testator, during her natural life, and after her decease to pay over the income to certain charities. The gift to the trustees is residuary, and the following words are used: "All my estate and property, real, personal or mixed, of which I shall die seised or possessed, or to which I may have any claim or be in any manner entitled at the time of my decease." The trustees were directed to take and hold the real and mixed estate, and invest the personal.

Neither at the time of making the will, nor at the death of the testator, had he any estate that could be properly called mixed, but the residue of his real estate amounted to $435,839, and of his personal estate to $124,736. Among other property, he had at the time of making the will a leasehold estate in Boston, which was the residue of a term of twenty years commencing July 1, 1858, subject to an annual rent of $2500, with taxes, assessments, insurance and repairs, and was appraised in the inventory at $7500. The gross rent of it is $4950, and the net income

$1225. He also had a leasehold estate in New York, at a ground rent of $425, with a dwelling-house thereon, which he occupied at the time of his death. The term was twenty-one years from May 1, 1865, with provision for a renewal.

The present case relates to the property in Boston, and the defendant contends that, inasmuch as there was no other property to which the term " mixed " could possibly apply, the testator must have intended thereby to designate the leasehold. The defendant's propositions, that the intention of the testator is to be ascertained from the whole will taken together, aided by the surrounding circumstances, and also that the intention is to govern if it is one consistent with law, are undoubtedly correct. Also the proposition that some meaning must be given, if possible, to all parts, expressions and words used in the will, and that no parts are to be discarded and disregarded as meaningless, if any meaning can be given them consistently with the rest of the instrument.

But in this case no difficulty arises from these rules of construction. The language of the will shows that the testator had in view not only the property which he then had, but whatever property he might afterwards acquire during his life, and intended to leave no doubt that it should pass to the trustees, whatever it might be. By the use of the word " mixed " he removed all such doubt. It is not necessary, therefore, to suppose that he used it in any unnatural or unusual sense, for the purpose of designating property which is clearly personalty. Nor do we derive any aid from the fact that his house was on the leasehold estate in New York. Whatever he might call it, he did not give it to his widow specifically; but gave her an income which would enable her to hire that or any other suitable house. We see no reason to doubt that the leaseholds are personal estate.

The leasehold is of a wasting nature ; and if the tenancy for life shall continue a few years longer, and the rents are regarded as income, there will be nothing left for the remaindermen. The course to be taken in such a case is clearly stated in *Kinmonth* v. *Brigham*, 5 Allen, 270. The object is to secure as nearly as possible the enjoyment of the same term to the successive takers. This can be done by fixing the value at the time when the right

of the first taker to its use commences. The tenant for life should receive the interest on that value till it is sold, and, after a sale, should receive the income of the avails.

*Decree accordingly.*