Union County Trust Company and Theodore S. Kenyon, executors of the estate of Thomas T. Gray, deceased, complainants,

*v.*

Frederick Charles Gray et al., defendants.

[Decided April 2d, 1932.]

*Messrs. Whittemore & McLean,* for the complainants.

*Mr. Edward S. Atwater, Mr. Daniel J. O'Hara* and *Mr. Willard A. Milchell* (of the New York bar), for the defendants.

Backes, V. C.

The executors of the will of Thomas T. Gray seek advice as to the proper disposition to be made of dividends declared by the Gray Processes Corporation.

The testator owned fifty-eight thousand one hundred and eighty-eight voting trust certificates (shares) of the corporation; its capitalization is one hundred thousand shares. He bequeathed four thousand five hundred certificates to legatees outright; four thousand in trust for his two brothers and two sisters, and the balance, forty-eight thousand six hundred and eighty-eight, part of the residuary estate, he gave to his executors in trust. The several bequests to his brothers and sisters of one thousand certificates are alike, as follows:

"Eleventh: I give and bequeath to my trustees herein named, one thousand (1,000) voting trust certificates of the Gray Processes Corporation, in trust, however, to pay the net income derived from said certificates to my brother, Frederick Charles Gray, during the term of his natural life. Should the said Frederick Charles Gray be survived by his wife, Claire Gray, then I order that my trustees continue to hold the said certificates, or the proceeds thereof, and pay the net income therefrom to Claire Gray, the wife of my said brother, Frederick Charles Gray, for and during the term of her natural life, and upon her death, or upon the death of Frederick Charles Gray, if she should predecease him, then I order that the said certificates, or the proceeds thereof, be divided among the children of Frederick Charles Gray, share and share alike, provided they shall respectively have arrived at the age of thirty years, the child or children of any deceased child to take the share which his, her or their parents would have taken if living. If the children of my brother, Frederick Charles Gray, have not arrived at the age of thirty years, then I order and direct my trustees to continue to hold the said certificates, or the proceeds thereof, and to pay the income in equal shares to the children of Frederick Charles Gray until they respectively arrive at the age of thirty years, at which time I order and direct my trustees to distribute the said certificates, or the proceeds thereof, among the children of Frederick Charles Gray, in equal shares, or their issue, *per stirpes* and not *per capita*. If Frederick Charles Gray should die without issue, or grandchildren him surviving, then upon the death of the said Frederick Charles Gray, or his wife, Claire, whichever shall be the survivor of the two, the said trust certificates, or the proceeds thereof shall be held by my trustees and added, in equal shares to the trusts herein created for my brother, Alanson McDowell Gray, and my sisters, Fanny Josephine Gray and Josephine Gray Weeks. to be held and disposed of in the same manner that said trusts are to be held and disposed of.

\*        \*        \*        \*        \*        \*

"Fifteenth: In the last preceding four paragraphs I have given to my trustees certain voting trust certificates of the Gray Processes Corporation to be held in trust. I hereby authorize and direct my trustees to sell and dispose of the said voting trust certificates, or .

stock of other securities to which such certificates may be converted, at such time and in such amounts, and for such prices, as my trustees, or the survivor of them, may deem for the best interests of my estate. I would suggest that my trustees, if they deem it advisable to sell the said voting trust certificates, or the survivor, communicate with T. S. Kenyon and Walter Miller, and secure their opinion as to the advisabity of disposing or holding the said voting trust certificates. If my trustees shall dispose of the said voting trust certificates, then I order and direct them to reinvest the proceeds thereof, and pay the income therefrom and distribute the principal thereof as hereinabove stated.

"Sixteenth: The voting trust certificates herein bequeathed represent the same number of shares of stock which I formerly held in the Gray Processes Corporation, and if before my death the said voting trust certificates should be reconverted into stock of said corporation, then it is my will that the same number of shares of stock of said corporation be transferred to the respective beneficiaries herein named.

"Seventeenth: I hereby authorize my executors and trustees, or the survivor of them, to retain any of the stock, voting certificates or other evidences of indebtedness, and other securities and investments, of which I shall die seized or be entitled to, whether they may be deemed lawful investments for trust funds or not, and without being subject to any personal liability for depreciation in value thereof, and in the event of the sale of any of the securities in any of the said trust funds, I authorize my trustees, or the survivor of them, to invest and reinvest the proceeds therefrom, or any other funds in their hands, in addition to the kinds of securities allowed by law, in any securities, stocks, bonds or other investments which in their judgment are safe and for the best interests of my estate, whether they may be deemed lawful investments for trust funds or not, and without being subject to any personal liability for any loss to the estate by reason of depreciation in value of such investments."

The residuary clause reads:

"Twentieth: I give, devise and bequeath all the rest, residue and remainder of my property and estate, both real and personal, wheresoever and whatsoever the same may be, to my executors hereinafter named, or the survivor of them, in trust, to hold and invest and reinvest the same, and collect the rents, income and profits thereof, with power to retain as part of my trust estate, without responsibility for the exercise of discretion in so doing, any or all of the stocks, bonds or other assets or securities owned by me at the time of my death; said executors and trustees, or the survivor, shall divide my property and estate into three parts, as nearly equal as practicable, and shall pay the net income of one of said parts to my wife, Ella M. W. Gray, for and during the term of her natural life, and shall pay the net income of another of said parts to my daughter, Anne Randolph Gray, for and during the term of her natural life, and shall

pay the net income of the remaining third part to my daughter, Ruth Watson Gray Buchanan, for and during the term of her natural life. Upon the death of my said wife, the principal of the share of which she is given the income shall be added in equal parts to the shares of which my daughters are entitled to the income. Upon the death of either of my daughters, leaving issue, said trustees or trustee shall pay or distribute, *per stirpes*, the principal of the share of which said daughter shall have been entitled to the income, to her said issue. If either of my said daughters shall die without leaving issue, the principal of the share held in trust to provide an income for said daughter, shall be added to the share held in trust for the surviving daughter, and upon her death shall be paid and distributed, in equal shares, among her children *per stirpes*. If both of my daughters shall die without leaving issue, said trustees or trustee shall pay and distribute my entire estate to and among my brothers and sisters, and their issue, in equal shares, *per stirpes* and not *per capita.*"

The Gray Processes Corporation was formed in 1924. Its assets consist of a patented process for treating gasoline, of which the testator was the inventor. Its sole income is from license fees and royalties from the patent, which, during the five years next preceding the testator's death exceeded a million dollars, most of which was annually paid out in dividends, so that at the testator's death (April 17th, 1931) there remained a surplus of but ................. $171,113.42

To this, at the next dividend period, was added

the profits since the last dividend .......... 3,769.30

And the proceeds of an insurance policy on the

testator's life .......................... 101,251.63

$276,134.35

And on June 11th, 1931, the corporation declared a dividend of $50,000, and an "extra" dividend of $50,000.

On October 20th, 1931, the directors again declared dividends by this resolution:

"It was unanimously resolved that a regular dividend of fifty cents per share and an extra dividend of fifty cents per share be declared on the stock of the Gray Processes Corporation, payable on January 2, 1932, to stockholders of record on December 16, 1931; and

"It was further resolved that said dividend shall be paid out of the amounts which have been added to surplus on the books of the corporation since July 1, 1931, so far as earned since that date, and

if an insufficient amount to pay the said dividends shall have been added to the surplus since that date, then the balance shall be paid out of surplus existing on the books of the corporation prior to July 1, 1931."

The executors ask: Are these ordinary or extraordinary dividends; are they *corpus* or income or both; are they to be apportioned, and if so, how; is the life insurance surplus; is a distinction to be drawn between license fees and royalties if the dividends are apportionable? A neat answer, that the first dividend is extraordinary and the other is not, would be of no assistance, for solution of the meritorious questions is not to be found in nomenclature. The tags "regular" and "extra" are presently of no significance.

Where the income is severed from the ownership of capital stock and given to one for life, ordinary dividends, *i. e.*, dividends periodically declared in the regular course of business, whether out of surplus, current profits or both, ordinarily belong to the life tenant. Judicial convenience forbids that the source be inquired into. *Earp's Appeal, 28 Pa. St. 368.* Extraordinary dividends *may* be apportionable between *corpus* and income. If they include surplus or accumulated profits at the time of the severance, they are to be apportioned: if they are made up of profits accumulated after the severance, they are not; they belong to the life tenant. *Van Doren* v. *Olden, 19 N. J. Eq. 176.* The cases cited by counsel are not in conflict, but support the propositions. In *Lang* v. *Lang's Ex'r, 57 N. J. Eq. 325,* an extraordinary cash dividend was apportioned between *corpus* and income; it was out of earnings for the fiscal year of the testator's death and was allotted *per diem* per term. *Day* v. *Faulks, 79 N. J. Eq. 66* and *McCracken* v. *Gulick, 92 N. J. Eq. 214,* were stock dividend cases; the stock going to capital, the par value to income, evidently upon the assumption that the price came from earnings during the life tenancy, though from the record in the latter case it would appear that the dividend was out of surplus accumulated before and after the testator's death. In *Ballantine* v. *Young, 79 N. J. Eq. 70,* there was an extraordinary cash dividend declared out of surplus, ob-

viously to enable stockholders to pay for a new and equivalent stock issue; the new stock was awarded to *corpus* and the price to income, in the proportion that accumulated surplus earned during the life tenancy bore to that existing at the testator's death. *Hagedorn* v. *Arens, 106 N. J. Eq. 377,* was a stock dividend case; the stock was held to belong to *corpus,* as in the Day and McCracken suits, but subject to charges in favor of the life tenants in the proportions fixed in the *Lang Case.*

The rule of convenience was rejected in the *Lang Case* as working injustice to the *corpus.* The sound reasoning of Mr. Justice Collins is established law in the circumstances there presented, but the liberty is taken of thinking that, although the language is sweeping, the rule was not generally condemned, and that the court of errors and appeals did not mean, when a corporation, as a matter of orderly management and to maintain its prestige in lean years, sometimes dips into surplus for dividends, to be restored in fat years (a common practice in these dull days), to charge a trustee with the duty of inquiring into the source of regular dividends and to hold him responsible to *corpus* for the fraction of intermingled ante severance surplus. It is felt that the opinion does not speak that extreme of inconvenience and hardship, and that Vice-Chancellor Buchanan's *dictum* in *Hagedorn* v. *Arens,* "that the rule [apportionment] is to be applied in the case of ordinary cash dividends as well as extraordinary cash dividends," is within this limitation of the *Lang Case.*

The regular and extra dividends of June 11th, 1931, are apportionable, regardless of terminology and the rule of judicial convenience. The reason for the rule precludes the rule. So much of the dividends as represents life insurance, obviously, was capital; the earnings for the six months preceding the dividend, $3,769.30, are apportionable to *corpus* and income, as in the *Lang Case.* The insurance was effected by the corporation on the life of Mr. Gray, manifestly for its indemnity against the loss it would suffer by the death of its inventive genius; and it paid the premiums. The insurance was for protection, not for profit. The company was not

speculating or investing in life insurance for gain; that was not its business, nor an adjunct. Such insurance belongs to capital, as would insurance received for loss by fire of its buildings or equipment. By dubbing it income and dividing it as profit, the corporation cannot defeat the *corpus* by giving the life tenants the principal, of which they were to have the interest only. *McLouth* v. *Hunt, 154 N. Y. 179.*

Before the testator died, the profits were divided semiannually by a regular dividend of fifty cents a share and an "extra" dividend of fifty cents a share, and in one year (1929) by an additional "special" dividend of twenty-five cents a share. The dividends of October 20th, 1931, regular and extra, were out of current profits and ordinarily would go to the life tenants.

The residuary life tenants, however, are not entitled to the dividends. The bequest of the residuary estate is not a gift of the certificates to be enjoyed in specie, and as the estate, in respect of the certificates, is perishable, the rights of the residuary beneficiaries are to be determined by the principle of conversion. It is apparent that the testator intended that his residuary estate should be enjoyed in succession by his widow and children in the first instance and then by his grandchildren. The income from license fees and royalties will end with the life of the patent, and, meanwhile, paying it out in dividends to the life tenants may result in disappointing the remaindermen. The life tenants are entitled to the income from, but not the income of the residuary estate, and, for the protection of the remaindermen, the value of the certificates is to be ascertained as of the testator's death and the life tenants paid interest on the sum, as in *Helme* v. *Strater, 52 N. J. Eq. 591,* where the principle was laid down and applied by Chancellor McGill: "Where a testator bequeaths the residue of his property without specific description, or, in other words, indicating an intention that it shall be enjoyed in specie, first to a tenant for life and then to a remainderman, and thus manifests that the same fund shall be successively enjoyed by both, the necessary inference and established rule in equity is that it must be invested as a

permanent fund so that the successive takers shall enjoy it in an equally productive capacity. But where it consists in whole or in part of property which is in its nature perishable, which for some reason cannot be converted into money or cannot be so converted without great sacrifice of both principal and interest, the tenant for life will not be entitled to the annual product which the property thus perishing is actually making, but to interest from the testator's death on the value thereof estimated as of that time." In the *Helme Case* both the dividends and the capital stock were being absorbed. In the instant case the capital stock will have lost most of its value with the expiration of the patent. It is true that the corporation maintains a staff engaged in developing improvements on its basic invention, which may prolong the period of income, but patents on the improvements, too, have their limitation. The life, income and prosperity contingencies of the corporation are manifestly precarious and were when the will was drawn, and unless a contrary intention is indicated, it is assumed that conversion was intended. The rule of the court (says Lewin) under which perishable property is converted does not proceed upon the assumption that the testator in fact intended his property to be sold, but is founded upon the circumstance that the testator intended the perishable property to be enjoyed by different persons in succession, which is accomplished by means of a sale. The court presumes that intention unless a contrary intention appears on the face of the will, and the only difficulty is what will constitute a sufficient indication of a contrary intention, the more recent decisions allowing smaller indications to prevail than were formerly deemed necessary. *Lew. Trusts 300.* Here there are none. The residuary clause is neutral. The seventeenth clause is merely an indemnity to the trustees that, by continuing the voting certificates as assets of the estate, they will incur no personal liability, and the power to retain them as part of the trust estate, without responsibility, &c., as provided in the residuary clause, is simply by way of further assurance; in truth, the power given to the trustees to "invest and reinvest" the estate im-

plies that it should be converted. There is no indication of intention to vary the relative rights of the legatees, or, that the rule of conversion should not obtain. Constructive conversion will be ordered.

The gifts of one thousand certificates (shares) in trust for each of the testator's brothers and sisters for life are in specie, and, without more, they would be entitled to the dividends whether the bequests be specific or general, or of a wasting estate. *Jarm. (R. & T.) 204.* But the testator intended that the subject of the gifts was to be enjoyed by the legatees in succession, and to that end ordered a conversion. The power contained in the fifteenth clause is not only authority but a positive direction to the trustees to convert the certificates, and, while they have a wide latitude as to when to sell, they have no option as to funding the gifts; the discretion is for the purposes of the will, not the conversion, and the conversion, when exercised, relates to the testator's death. The elaborate and detailed provisions for the intermediate and ultimate enjoyment of the certificates "or the proceeds," are plain manifestations of intention that the income of the fund, not the dividends on the shares, was to be had by the life tenants.

The bequests to the trustees are specific and carry income from the death of the testator. If the gift clauses stood alone, the bequests would be general. *Blair* v. *Scribner, 67 N. J. Eq. 583.* But the power given the trustees to sell the certificates and to reinvest the proceeds, and the provision that upon reconversion of certificates into stock, stock was to be transferred in substitution of certificates, as appears by the fifteenth and sixteenth clauses, plainly show that the testator's certificates, in possession, were the subject of the gifts. Such identification, the authorities hold, manifests intention of giving specific property. *Norris* v. *Thomson's Ex'rs, 16 N. J. Eq. 542; Moore's Ex'r* v. *Moore, 50 N. J. Eq. 554.* Vice-Chancellor Leaming held in *Mecum* v. *Stoughton, 81 N. J. Eq. 319,* that gifts of shares in a corporation, without further specification, are general, although the testatrix owned the total number of shares bequeathed, and he ex-

pressed doubt that gifts of parcels of shares mentioned as belonging to a testator, not otherwise identified, were specific legacies.

There will be a reference to a master to determine the value of the certificates, and lawful interest will be allowed if the annual income equals the rate.

It is the fact that only about ten per cent. of the oil industry is presently using the patented process and that the rest of the field is open to exploitation which may greatly swell the annual profits. The possibility requires that the valuation be periodically adjusted to increased annual profits.

Income of the residuary estate is payable to the life tenants as of the death of the testator; it bears interest from that time. *Green* v. *Green, 30 N. J. Eq. 451,* approved *Van Blarcom* v. *Dager, 31 N. J. Eq. 783.*

A decree may be entered in accordance with this opinion.