INDUSTRIAL TRUST COMPANY *et al. vs.* JOHNSON W. PARKS *et al.*

FEBRUARY 17, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

364

Moss, J.   This is a suit in equity begun by a bill for instructions which was filed in the Superior Court by Industrial Trust Company, Agnes Parks Winslow and Johnson W. Parks, as trustees under the will of George M. Parks, late of the City of Providence in this State, deceased, against Johnson W. Parks and Agnes Parks Winslow, individually, and her three daughters, who are her only children and all minors.   The Superior Court appointed Agnes Parks Winslow to be guardian *ad litem* for these minors, and appointed Fred A. Otis, Esq., to represent the contingent interests of persons not in being or not ascertainable.   An answer was duly filed by him for such persons and one by the guardian *ad litem* for such minors. The adult respondents also filed answers for themselves. When the pleadings were closed, oral and documentary evidence was introduced, and the case, being then ready for hearing for final decree, was certified to this court for determination in accordance with General Laws, 1923, Chapter 339, Sec. 35.

The residue of the testator's estate was by his will devised and bequeathed to the complainants as trustees, and included, besides other personal property valued at somewhat more than $1,000,000, rights under three contracts between the testator and the Massachusetts Mutual Life Insurance Company, for which he had been an agent for many years, to receive from that company certain com-

missions on the renewal premiums that it would receive for certain periods on life insurance policies issued through his agency. Since the death of the testator on December 24, 1934, these commissions, as they have become payable, have been paid to the complainants as trustees, the payments in the first four months of 1935 aggregating $15,493.61. If they continue to retain the testator's rights under the contracts, the trustees will be entitled to receive such commissions, in constantly diminishing amounts, until the end of about ten years after his death, when the rights to commissions under any of the contracts will finally terminate. The insurance company placed on these commissions, to be paid after the date of the testator's death, a present value, as of that date, of $129,074.

The question as to which the trustees seek to be instructed by this court is whether these commissions are to be treated as wholly income of the trust estate, or as wholly increments of principal, or are to be apportioned between the income and principal of the trust estate.

The testator was never married. He left surviving him as his sole next of kin a brother and Johnson W. Parks, who is the son of a deceased brother, and Agnes Parks Winslow, who is the daughter of another deceased brother. For many years before his death he had made generous contributions of money to them all and had contributed generously to the support and education of the three daughters of the last named. By the terms of his last will, dated December 31, 1931, as modified by a codicil of the same date and a second codicil of March 31, 1933, after making various gifts to a considerable amount, he left the residue of his estate in general terms, without mentioning his rights under the above described contracts, to the present complainants as trustees, "with full power to hold the same in the same form of investment as when delivered to them, and with full power and right to invest, reinvest, change and vary investments of the same from time to time in their discretion, with full power to manage, act

and deal with said property absolutely in their discretion as they may judge for the best interests of my said trust estate; with full power to sell any or all property or estate of any kind which may come into the possession of my said Trustees, . . . with full power to collect and receive the income, dividends, rents and profits from all investments and property which may become a part of said trust estate (said income, dividends, rents and profits being hereinafter included in the word 'income')".

He directed the trustees to make, out of income or, if necessary, out of principal, certain monthly payments to certain persons for their respective lives. Besides payments directed to be made to a cousin who predeceased him, these payments were to be made to his only surviving brother and that brother's wife and to the widows of four other brothers, and aggregated, while they should all survive, $13,200 per year. He then directed that the trustees should, out of income, or, if necessary, out of principal, maintain the old family homestead until the death of his living brother and that brother's wife. He next directed that twenty per cent. of the remaining income should be set aside and accumulated for ten years and then added to the principal of the trust estate; and that of the remaining income one-half should be paid to Johnson W. Parks for ten years after the death of the testator; and that then one-half of the entire trust estate with its accumulations should be paid to him, if then living.

The testator next directed that if Johnson W. Parks should die within the ten years, leaving issue him surviving, the trustees should thereafter pay this half of the income for the benefit of such issue, until the oldest living one of such issue should reach the age of twenty-one years, and then should transfer to such issue one-half of the trust estate, with a gift over in case of a preceding failure of such issue, or in the event of the death of Johnson W. Parks, without leaving issue, within ten years after the testator's death. He directed that one-half of the income still re-

maining should be paid to Agnes Parks Winslow during her life and that the other half and the entire remaining income after her death should be paid in equal shares to her children for their respective lives, with various cross remainders of income. The trust as to the half of the trust estate out of which Agnes Parks Winslow and her issue were to receive income was directed to terminate at the end of twenty-one years after the death of the final survivor of Agnes Parks Winslow and her children or on her earlier death and total failure of her issue; and then that part of the trust estate was to be conveyed to her then living issue or to certain others, as the case might be.

In the instant case, then, a part of the trust property received by the trustees from the testator's estate consisted of rights under three contracts to receive from an insurance company, for a period of about ten years from his death, payments of commissions, beginning at the rate of about $4,000 a month and gradually diminishing to nothing and having an estimated present value of $129,074 at the time of his death. The will made no reference to these rights and directed a part of the net income of the trust estate to be reserved and added to the principal for ten years and the rest of it to be paid out to various relatives and sisters-in-law for various periods, nearly all for the lives of the respective recipients, and made final disposition of the principal to others, except in the case of the testator's nephew, who is to receive one-half of the principal at the end of the ten years, if then alive. The question to be decided is what the trustees shall do about these commissions.

In order to assist this court in deciding the question raised, the attorneys for the trustees have presented the arguments and authorities in favor of the contention that the payments should be treated by the trustees as income only; and Mr. Otis, as representative of persons not ascertained or not in being, has similarly supported the contention that the payments should be treated as principal only.

In *Howe* v. *Earl of Dartmouth,* 7 Ves. Jr. 137, (1802), a question arose similar to the one raised in the instant case. There, real and personal estate, including short and long term annuities, had been left by will to persons for successive life estates, with final remainders over absolutely, and the question was brought before the chancellor as to what should be done about the annuities. Lord Eldon held that they should be sold and the proceeds of the sale invested in government 3% securities, so that the income would go to the life tenants and the principal would be held intact for the remaindermen. In his opinion, at page 149, the rule is laid down thus: "That is the principle, upon which it is agreed these cases are to be construed; and the intention has never been considered manifest merely from a disposition of the personal estate in the same clause with land; which must be taken to be specifically given. But those cases do not go the length, that, if the enjoyment is portioned out in life interests, with remainders over, it is specific. I am clearly of opinion therefore, that this is not a case, in which the personal estate is in this sense specifically given, with a direction, that it shall remain specifically such as it was at the testator's death; and the purposes, for which it is given, are those, for which it is admitted there is a general rule, that these perishable funds are to be converted in such a way as to produce capital, bearing interest."

In the absence of evidence in the will that the testator did not intend such a result, this rule of "conversion of wasting assets", as it is often referred to, has been generally applied in cases where such assets are included in residuary estates the benefit of which is given to certain persons for their lives, with final gifts over to others.

Thus in *Kinmonth* v. *Brigham,* 5 Allen 270, (1862), the general principle laid down in *Howe* v. *Earl of Dartmouth, supra,* was applied where the residue of a testator's estate, of every kind, was left to trustees, with directions to keep the property safely invested and to distribute the income

in a certain manner to his widow and children for their lives, and afterwards to make final distribution of the principal in a certain manner; and a part of the residue was a somewhat hazardous and uncertain investment of $50,000, made by the testator as a special partner in a business partnership for a certain period of years, which did not end until a few years after his death. He was to have half of the profits annually and bear half of any losses and to get back the amount of his investment. His estate succeeded to his rights.

The surviving partners paid to the executors and trustees the $50,000 invested by the testator, and more than $100,000 besides as his share in the profits made after his death. Those entitled under the will to the income of the trust estate claimed that they should have as income all these profits paid in, but the court held that so much of these payments should be considered to be principal, and be invested accordingly, as, if received and invested at the testator's death, would amount, with interest at six per cent. and making annual rests, to the sum actually received by the trustees at the time when it was received; and that the remainder of the sum received should be distributed as income.

At page 278 the court says that in Massachusetts "it has never been held that trustees for successive takers were at liberty to disregard the security of the capital, in order to increase the income." It then continues: "Nor, where property is of a wasting nature, is an investment in it consistent with their duty, in the absence of specific directions in the creation of the trust. They are equally bound to preserve the capital of the fund for the benefit of the remainder-man, and to secure the usual rate of income upon safe investments for the tenant for life; and to use a sound discretion in reference to each of these objects. If there is no specific direction, and they are charged merely with the general duty to invest, they cannot postpone the yielding of income for the increase of the capital,

nor select a wasting or hazardous investment for the sake of greater present profit. And the rule is the same in regard to property which comes to the trustees from the testator, not specifically bequeathed, as it is in regard to making new investments. If the investment is not such as this court would sustain them in making, it should not be allowed to continue, but should be converted. Its value as a fund should be ascertained as of the time when the enjoyment of the income of it is to commence; and the fund treated as if it had been at that time converted into such an investment as the court would sanction."

Thus, also, in *Minot* v. *Thompson,* 106 Mass. 583, (1871), where trustees under a will had filed a bill for instructions, the testator had given all his estate, real, personal and mixed, to trustees in trust "to take, hold and manage the real and mixed estate, and to invest the personal" and to pay the net income to his wife and after her death to certain charities. Included in the property, which passed to the trustees under this general devise and bequest in the will, was a leasehold interest for an unexpired term of about nine years in rental real estate in the City of Boston. It was sublet by the testator at rentals which would yield an annual net income of $1,225 after making the payments required to be made by the testator as lessee under the terms of the original lease. This leasehold estate for the unexpired term was appraised at the value of $7,500, as of the date of his death, and it was held that until it was sold the widow was entitled to interest on this value and, after it was sold, to the income from the proceeds.

At page 585 the court says: "The leasehold is of a wasting nature; and if the tenancy for life shall continue a few years longer, and the rents are regarded as income, there will be nothing left for the remaindermen. The course to be taken in such a case is clearly stated in *Kinmonth* v. *Brigham,* 5 Allen 270. The object is to secure as nearly as possible the enjoyment of the same term to

the successive takers. This can be done by fixing the value at the time when the right of the first taker to its use commences. The tenant for life should receive the interest on that value till it is sold, and, after a sale, should receive the income of the avails."

The attorneys for the trustees, in contending that the payments in question in the instant case should be treated by the trustees as wholly income, rely very strongly on the case of *Dexter* v. *Dexter*, 274 Mass. 273, 174 N. E. 493, (1931). The opinion in that case does support their contention to a considerable extent, especially by some of its language. It was a very peculiar case in its facts. A testatrix had left the residue of her estate in trust, the income to be paid to her surviving husband during his life and the principal to go to others upon his death. A part of the residue consisted of a small share of the income of a trust under another will, payable during the period of the survivorship of the husband. It was held that this share of income should be paid to the husband during the remainder of his life. This result seems a satisfactory one, under the peculiar circumstances, though some of the reasoning in the opinion is not very convincing to us. The court, however, rested its decision very largely on the ground that certain language in the will rebutted the presumption, as to the testator's intention, upon which was based the doctrine of conversion of "wasting assets" as applied in *Kinmonth* v. *Brigham, supra,* and *Minot* v. *Thompson, supra.*

In view of the peculiar circumstances of the *Dexter* case and in view of the reasoning in the opinion and of the fact that the court nowhere therein purported to overrule these earlier Massachusetts cases, we do not feel that the authority of them as precedents is seriously weakened; and so far as there is any inconsistency between the reasoning in that case and in the earlier cases, the reasoning in the earlier cases is much more convincing to us.

The reasoning upon which are based the case of *Howe* v. *Earl of Dartmouth, supra,* and the other cases which have been similarly decided has sometimes been misunderstood. It is not that there is a presumption that the testator, in creating the trust, had in mind the wasting nature of the assets in question and therefore intended that they should be converted into a non-wasting investment, of which the income would be enjoyed by those entitled to the income of the trust estate, and the principal would be retained without diminution, for the benefit of those ultimately entitled to it.

On the contrary, the first step in the reasoning is that if a testator has provided that a certain person shall for his life have the income of the residue of the intangible property of the estate and that upon the death of that person such residue shall go to others absolutely, the natural inference, in the absence of evidence in the will to the contrary, is that the testator intended that these other persons should, at the time stated, come into the enjoyment of *all* such residue, without diminution by reason of the enjoyment of the income from it by the life beneficiary. The second step is that this inferred intention can only be carried out, as to wasting assets, by having them converted into non-wasting, income-producing assets at the beginning of the trust or treated as if they were then thus converted. *Union County Trust Co.* v. *Gray,* 110 N. J. Eq. 270, 277, 159 A. 625, 629 (1932). This presumed intention may be rebutted by competent evidence that the testator had such wasting assets in mind and intended that they should be retained, without showing any intent that the payments therefrom should be apportioned between income and principal. An excellent discussion of the presumption laid down and applied in *Howe* v. *Earl of Dartmouth, supra,* and of the true basis for the rule, and of the cases applying it and those in which the presumption was rebutted, is contained in 77 A. L. R. 761, 774, being the latter part of a note in the report of *Dexter* v. *Dexter, supra.*

Among the cases in which the presumption was held to be rebutted is *Old Colony Trust Co.* v. *Shaw*, 261 Mass. 158, 158 N. E. 530, (1927). This is cited and somewhat relied on in *Dexter* v. *Dexter, supra,* and by the complainants in the instant case. There the testator left the residue of his estate to trustees in trust to pay the income to his widow and children until the time of the death of the final survivor of them, and gave this residue at that time to his issue then living. A part of his residuary estate consisted of mining stocks. In the will the testator said: "I authorize and empower my Trustees in their discretion to continue as long as they think wise to hold stock in mining companies and any other securities or property of any kind which may be found in my estate at my death, even though the same be unproductive of income or be of a kind not usually considered suitable for Trustees to select or hold."

The court recognized the validity of the above general presumption as to wasting assets but held that it did not apply to the case before them and that all the cash dividends on these stocks during the trust should be paid to the life beneficiaries. The reasons which the court gave were that the above-quoted language expressly authorized the trustees to retain these stocks and they had chosen to do so; that there was no evidence that the payment of the dividends impaired the value of the shares; and that the established rule in Massachusetts was to regard cash dividends, however large, as income, and stock dividends, however made, as principal. The distinctions between that case and the instant one are obvious.

In the instant case the complainants, in support of their contention that the payments in question should be treated as entirely income, also rely on the case of *Poole* v. *Union Trust Co.,* 191 Mich. 162, 157 N. W. 430, (1916). That concerned royalties under leases of mining lands, in which mining operations were going on at the death of the testator, and the decision that these royalties were to be

treated as wholly income was based on grounds that in our judgment are not present in the instant case.

The complainants also rely strongly on the case of *Bull* v. *United States,* 295 U. S. 247, (1935). In that case the questions before the court concerned only the determination of federal income and estate taxes. For that reason and because of its special facts we do not see how it can be of any assistance to any of the parties in the instant case, which depends for its decision on the actual or presumed intention of the testator as found in his will, while the question of what is income and what is *corpus* for the purposes of income and estate taxation is governed by very different considerations.

For the same reasons a number of the other cases relied on by Mr. Otis, in support of his contention that the payments in question should be treated as principal only, have little, if any, bearing on the issue in the instant case. The rest of the cases relied on by him do not seem to us to support his contention, except perhaps the New York case of *Rubenstein* v. *Rubenstein,* which will be discussed *infra.*

On the other hand the opinion of this court in *Rhode Island Hospital Trust Co.* v. *Tucker,* 52 R. I. 277, 160 A. 465, (1932), recognized and approved the doctrine as to the conversion by trustees of wasting assets, as stated and applied in *Howe* v. *Earl of Dartmouth, supra,* and the cases which follow it; and in its opinion and decision this court approved a correlative and consistent rule as to the conversion by trustees of unproductive securities and applied it in favor of apportionment, between income and principal, of the proceeds of sales, under the following circumstances, by testamentary trustees, of shares of stock of certain corporations which distributed regular stock dividends but paid no cash dividends. Shares of the stock of these corporations were received by the trustees as a part of the residue of the testatrix's estate, and fifty shares of the stock of one of them were sold by the trustees about fourteen months after the death of the testatrix. By the will

the trustees were directed to pay the income of the trust estate to certain persons for their lives and then to distribute the principal.

At page 278 this court said: "Unless clearly directed by the trust instrument so to do, a trustee should not indefinitely hold unproductive or wasting securities. A trustee, standing as he does between the life tenant and remainderman, must not favor one at the expense of the other. Nevertheless, it may at times be impossible, without great loss, to convert unproductive assets into cash for reinvestment without considerable delay, but when a conversion is made the life tenant is entitled to receive a portion of the proceeds to recompense him for the loss of income suffered in the meantime. . . . It is now the duty of the trustee, after giving due consideration to the condition of the market for these securities, to sell within a reasonable time. . . . There being nothing in the will to indicate a contrary intention, it will be presumed that the testatrix intended that from the date of her death her husband, the first life tenant, should receive the income."

This court then held that the proceeds of the sale made and of any future sale of any of these shares should be apportioned as follows: The trustee should ascertain what sum of money, if placed at interest at the death of the testatrix at the rate of interest which would have been received from such sum, if properly invested as trust funds in income-producing investments, would, with the interest accumulated to the time of the sale, have produced the amount realized at the sale. The sum so ascertained should be treated as capital, and the difference between that sum and the amount received for the stock sold should be paid to the life tenant as income. *Howe* v. *Earl of Dartmouth, supra,* and a number of cases applying the principles laid down in that case were cited and it was stated: "These principles were applied by this court in *Greene* v. *Greene,* 19 R. I. 619, and recognized in *Rhode Island Hospital Trust Co.* v. *Bradley,* 41 R. I. 174."

In *Rubenstein* v. *Rubenstein*, 221 App. Div. 612, 224 N. Y. S. 727, (1927), a case mentioned *supra,* but not discussed, the testator had devised the residue of his estate in trust for the benefit of his widow during her lifetime, with a gift over to others on her death. The unexpired term of a leasehold interest, owned by him in certain real estate, had been sold and assigned by him "at an increased rental of $1200 per annum," to be paid to him. The right to receive these annual payments was a part of the residue of his estate. The court held that they constituted *corpus,* reasoning thus, at 221 App. Div. 615: "Had the purchase price of the lease been paid in a lump sum obviously it would constitute part of the *corpus* of the estate. It makes no difference that the purchase price instead of being paid at one time is paid in annual installments." This is the entire substance of the reasoning, and the doctrine of conversion of wasting assets is not mentioned. It may be that there was interest on the deferred payments. If so, the decision seems to us correct, but not otherwise, since the present value of the right at the testator's death would have been less than the sum of the payments, and the case would have been substantially *contra* to the well-settled law of New York as to wasting assets and to *Minot* v. *Thompson, supra,* which seems to us to state and apply the correct doctrine for such cases. The *Rubenstein* case was not reviewed by the Court of Appeals.

Ignoring for the present the element of possible evidence, in the will, of an intent on the part of the testator contrary to the presumption on which the doctrine of conversion of wasting assets is based, the case which seems to us most closely parallel to the instant one is *Matter of Elsner,* 210 App. Div. 575, reported also, *sub nom.* *"In re Elsner's Will",* in 206 N. Y. S. 765, (1924). There the testator, who was an author, had entered into a contract with a publisher to write and prepare for the press a medical book to be entitled "Prognosis", and in this contract he assigned to the publisher all rights to the work and

the exclusive right to take out copyrights, *etc.*; and was to receive from the amounts obtained on sales, after payment of the cost of publication, a certain percentage, called a "royalty", on the retail price of books sold at a profit. It was provided that the contract as a whole could be assigned by either party.

On February 17, 1916, soon after the book had been completed and apparently after it had been published, the testator died. By his will he created trust estates, into which passed the right to the royalties under the contract, but without any mention of them in the will. The income of the trust estates was directed to be paid to certain beneficiaries, with the remainder disposed of otherwise. The royalties amounted to nearly $4,000 for the year 1916 and had declined to $13.50, for the last six months of 1923. The question before the court was what was the proper disposition of these royalties. The court cited *Howe* v. *Earl of Dartmouth, supra,* and some of the cases which have followed and applied the doctrine therein laid down; and it approved and applied that doctrine. It therefore held in substance that the royalties should be apportioned between capital and income by ascertaining what was the present value of the contract to the testator at the time of his death and treating that as capital, and treating as income the rest of the amount actually received in royalties.

In that case, just as in the instant one, what passed under the will to the trustees was a contractual right or rights to the receipt, over a limited period, of payments the amounts of which could not then be very definitely ascertained but could be fairly well appraised, and which would in all probability steadily diminish in value from the beginning of the period to the end. The consideration given by the testator in each case for such contractual right or rights was not money or property, but his skilled efforts for the accomplishment of results valuable to the other contracting party. The rights in the instant case,

also, were assignable. *In re Wright*, 85 C. C. A. 206, 151 Fed. 361, aff'd 157 Fed. 544 (1907). In the above-mentioned note in 77 A. L. R. the author at page 769 discusses the *Elsner* case and quotes at length from the opinion, saying that it "is very instructive upon the subject under annotation, and the ability with which the question is discussed justifies a lengthy quotation."

The court says at page 769: "The book might have been sold directly to the purchaser for a definite sum payable immediately, or by installments for a term of years. In either case, the principal would then be the sum of money thus received, substituted in place of the original capital, the book. This sum if invested would produce income. But the author preferred to take a speculative contract, in effect a sale, . . . whereby he received a percentage of profits to continue as long as the book met with a profitable sale. The principal is, under these circumstances, the beneficial interest the author had in this contract, its present value as a producer of income."

At page 770, the court continues: "Thus, also, with the book, the product of his skill; capital and income must eventually disappear; it cannot endure like more tangible property. In a case like this the principal and income blend and merge in the payments. . . . In like manner, a purchased annuity represents payments during life or a term of years of both the principal and income of the original investment."

At page 770 the court says that a decedent's trust estate "may consist of property known as 'wasting' securities," and then continues as follows: "Where such property not specifically bequeathed comes into the hands of the executors, trustees or life tenants of an estate, if it is retained the rule has long been established that the person given the use or income is entitled to receive only the income on the value of the property at the death of the testator (*Cairns* v. *Chambert, supra*), with a duty to account for the principal to the remaindermen. . . . Ordinarily it is regarded the duty of the executors or trustees to convert

such property into money and invest it in permanent securities, paying the income over to the person entitled thereto for life, or a term of years, retaining in their hands the principal sum for the benefit of the remaindermen. . . . If such property is retained by the executors, then there should be an apportionment of value between the principal and the income. . . . We think the property represented by the contract and the royalties can and should be apportioned between capital and income."

At page 770 the court concludes as follows: "To hold that the entire proceeds are principal would be to deny that the capital earns any income; to hold that the royalties are entirely income, leads to the result that a capital sum must become eventually unproductive and valueless. Either theory results in injustice, and we are not inclined to adopt either one or the other."

This of course is not an opinion of the highest court of New York, but we have found nothing *contra* in that court and much in accord with the general principles laid down. The reasoning is so convincing to us and the facts so similar to those in the instant case, that we are of the opinion that the same reasoning should be applied and a similar result reached here, unless there is something in the language of the will which leads to a different result.

The complainants put in evidence that the testator in his lifetime treated similar payments of commissions on renewal premiums as income, and in making up statements of his investments never included the contractual rights to such payments in the future. We cannot see how this evidence throws any light on the problem of what disposition should be made, as between principal and income, of such contractual rights existing at his death or of such commissions paid after his death. Nor do we see how such evidence can be competent on the question of the proper construction of the will as affecting the solution of that problem.

The complainants also contend that the payments of commissions should be treated as entirely income because,

they say, the testator showed in his will in various ways an intent to favor the life beneficiaries as against the ultimate beneficiaries. We doubt very much if an intent to favor the life beneficiaries in one way is relevant evidence of his intent to favor them in another, but, at any rate, we are convinced that there are even more indications that he favored those who would be interested in the trust estate after the period of ten years from his death—the very period when these payments would all be coming in—by providing that for these ten years twenty per cent. of the net income of the trust estate, after the payment of certain sums regularly to certain persons for their respective lives, should be retained and added to the principal.

If such considerations are relevant at all, it seems to us much more likely that he would have wished the income going to his niece and her children to increase regularly, while these children, who are shown by the testimony to have been respectively seventeen, thirteen and eleven years old on June 5, 1935, were growing older, instead of having it start very large and then probably decrease rapidly for a period of about ten years, as would be the case if the payments of commissions are treated as entirely income. But all such considerations are so speculative that in our judgment they should be given no weight, even if they are admissible at all.

In most of the cases of trust estates containing wasting assets to which the doctrine of conversion has been held inapplicable, the decisive element has been the fact that such assets were expressly mentioned in the will and that it has been found from express language in the will, or by clear implication therefrom, that the testator intended or was willing that such assets should until their exhaustion, be retained by the trustees. In the instant case no reference whatever is made in the will to the commissions in question or to the contracts by virtue of which they were payable; nor is there anything in the will to indicate that the testator wished to have them treated differently from his general assets.

The complainants, and apparently Mr. Otis also, rely upon the language in the second paragraph of clause Eighth of the will, in which the testator directs the trustee to stand seized and possessed of the residue of his estate "with full power and right to hold the same in the same form of investment as when delivered to them, and with full power and right to invest, reinvest, change and vary investments of the same from time to time in their discretion, with full power to manage, act and deal with said property absolutely in their discretion as they may judge for the best interests of my said estate."

In considering this language we see no good reason to find that the word "investment" was used in a sense broad enough to include the testator's rights to receive commissions on renewal premiums, which were not investments made by him in any ordinary meaning of the word. In our judgment the intent shown by the first part of the language just quoted was that the trustees should not be held liable for losses to the trust estate due to the retention by them of securities purchased, or other investments made, by the testator.

That this was the intent seems to us to be further indicated by the language of clause Twelfth of the will, in which the testator expresses his wish that the shares owned by him, at the time of his death, of the common stocks of certain types of corporations "shall not be sold unless the safety of the principal of such stocks is jeopardized." Nor do we find that the powers given to the trustees in clause Eighth include any power to determine what money or property received by them shall be treated as income and what as principal. So far as the testator showed any intent to deal with that question, it is found in the last paragraph of the clause, in which he stated just what sort of stock dividends and subscription rights should be treated as principal and what as income.

Our conclusion is that the will shows no intent by the testator that the contract rights in question should be re-

tained by the trustees and that they should not be sold and the proceeds invested in non-wasting, income-producing investments, nor any intent that the commissions, when received, should be treated as entirely income or entirely principal, nor any other intent that should prevent the application of the doctrine of conversion of wasting or non-productive assets.

This conclusion is not *contra* to the reasoning and decision of this court in *Rhode Island Hospital Trust Co.* v. *Bradley*, 41 R. I. 174, (1918). In that case the testator had died in 1906, leaving a will by which he gave to a trustee the residue of his estate, in trust to pay the net income to his wife during her life and then to set aside some parts of the trust estate for certain special purposes and thereafter to hold the rest of the trust estate for a certain charity. An important part of the residuary estate consisted of shares of stock in a land corporation and three land trusts, all four of which had been formed by the testator and others, and he had held the shares for many years.

These concerns did not engage in the general business of buying and selling land, but each one simply purchased, soon after its creation, a large quantity of vacant and unproductive land and thereafter sold portions of it, as sales could be made to advantage, and paid out in dividends on their shares the net proceeds of the sales. The trustee was still holding these shares when the case was begun by a bill for instructions, some years after the death of the testator, during which many sales of the lands had been made and their net proceeds paid out in dividends. Those paid on the shares belonging to the trust estate were claimed by the widow to be income of the trust estate for her benefit.

This court, however, held them to be in liquidation of capital and said that the trustee was under no duty to convert the shares into income-producing investments, because the testatrix expressly authorized the trustee "to continue so long as my said trustee may think best, any part or parts of my said residuary trust estate in the form

or investments in which the same may happen to be at the time of my decease even if hazardous and doubtful." These shares were clearly included within the term "investments", and were speculative and not income-producing investments; and so, as the court says at page 201: "The trustees were fully justified by the express terms of the will in retaining these shares as part of the trust fund and in waiting as they have done for the Land Company and the Land Trusts themselves to carry out the process of liquidation."

As to the question of apportioning the dividends between capital and income the court said, just before this quoted language, that only a part of the land had been sold and that there were no facts upon which could be based a computation of the value of the investment at the death of the testatrix, as in the cases in which the doctrine of such apportionment had been applied; and just after the above quotation it repeats the same thought by saying that there were no facts "from which it would be possible to capitalize these items of the trust estate so as to permit of any computation of interest which would be allowed upon any portion thereof in lieu of income . . . ," and adds: "Furthermore the life beneficiary makes no such claim to apportionment but claims all of the moneys heretofore paid to the trustee as above set forth as 'income, dividends and profits' under the terms of the trust."

In the instant case, on the contrary, there was, in our judgment, no express or implied authority given to the trustees to retain, as a part of the trust estate, either as income or principal, these contractual rights to royalties to be paid in the future; there is no difficulty in fixing the approximate value of these rights at the death of the testator, because the testimony shows that value as appraised by the company, which has not been contradicted or questioned; and each of the contending counsel asserts or admits that if his contention is not sustained by this court, the payments should be apportioned between income

and principal according to the doctrine of conversion of wasting assets. Moreover, the application of that doctrine to this case is in our judgment fully in accord with the reasoning and decision of this court in *Rhode Island Hospital Trust Co.* v. *Tucker, supra.*

Our final conclusions are as follows: (1) That the trustees should sell the rights in question if and as soon as they can be sold for such a price as the trustees, in the exercise of their considered judgment, shall deem it wise to accept in the interest of the trust estate; (2) that the respective payments of commissions, which have been received by the trustees or shall be received by them before such rights shall have been sold and paid for and before the last payment of commissions shall be received, shall be apportioned between income and principal in the same way as they would have been apportioned if such rights had been sold by the trustees immediately after the death of the testator for the sum of $129,074 and that sum had been loaned by the trustees at interest at the same rate as the rate of income that could reasonably have been expected from a proper investment of that sum in income-producing securities, and such payments had been received by the trustees as payments of the accrued interest and on account of the principal of the loan so made; (3) that as soon as such rights shall have been sold by the trustees and paid for or the last payment of commissions shall have been received by the trustees, the present value of said rights at the testator's death shall be recalculated at the rate of interest above described and the apportionment of all payments received by the trustees for or on account of such rights shall be readjusted accordingly in their accounts.

On March 3, 1937, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the Superior Court.

*Comstock & Canning, John E. Canning, Andrew P. Quinn,* for complainants.

*Fred A. Otis,* Guardian *ad litem.*